UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
DEC 1 3 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

ADHAM AMIN HASSOUN,

        Petitioner,

        v.

JEFFREY SEARLS, in his official
capacity as Acting Assistant Field Office
Director and Administrator of the Buffalo
Federal Detention Facility,

        Respondent.

**DECISION AND ORDER**

1:19-CV-00370 EAW

## **INTRODUCTION**

Petitioner Adham Amin Hassoun ("Petitioner") is a civil immigration detainee currently housed at the Buffalo Federal Detention Facility in Batavia, New York. Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1226a(b), arguing that his current detention is unauthorized by lawful statute or regulation and that he must be released, with appropriate conditions of supervision. Respondent Jeffrey Searls ("Respondent") contends that Petitioner is lawfully detained pursuant to both 8 U.S.C. § 1226a(a) and 8 C.F.R. § 241.14(d) and asks the Court to deny the Petition.

For the reasons that follow, the Court finds that Petitioner's continued detention is not lawfully authorized by 8 C.F.R. § 241.14(d). The Court further finds that additional

- 1 -

development of the record is necessary regarding whether 8 U.S.C. § 1226a(a) lawfully authorizes Petitioner's ongoing detention, and accordingly orders an evidentiary hearing.

## BACKGROUND

### I.   Legal Framework

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the Government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id.*

In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) permits the Government "to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal," and reached the latter conclusion. *Id.* ("Based on our conclusion that indefinite detention of aliens in the former category would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."). Under *Zadvydas*, the presumptively reasonable time frame for post-removal detention is six months. *Id.* at 701.

In October 2001, approximately four months after the *Zadvydas* decision and shortly after the terrorist attacks of September 11, 2001, Congress enacted the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct

Terrorism Act of 2001, Pub. Law 107-56, 115 Stat. 272 (the "Patriot Act"). Among other things, the Patriot Act "enacted a statute [8 U.S.C. § 1226a] which expressly authorize[s] continued detention, for a period of six months beyond the removal period (and renewable indefinitely), of any alien (1) whose removal is not reasonably foreseeable and (2) who presents a national security threat or has been involved in terrorist activities." *Clark v. Martinez*, 543 U.S. 371, 386 n.8 (2005).

In November 2001, in response to the decision in *Zadvydas*, the Attorney General of the United States promulgated 8 C.F.R. § 241.14. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg 56967 (Nov. 14, 2001) ("This rule amends the custody review process governing the detention of aliens who are the subject of a final order of removal, deportation or exclusion, in light of the decision of the U.S. Supreme Court in *Zadvydas v. Davis*. . . ."). This regulation, among other things, authorizes detention beyond six months for "[a]liens detained on account of security or terrorism concerns." 8 C.F.R. § 241.14(d). In particular, where it is certified by the Attorney General that: (1) an alien "is a person described in section 212(a)(3)(A) or (B) or section 237(a)(4)(A) of (B) of the [Immigration and Nationalization] Act or the alien has engaged or will likely engage in any other activity that endangers the national security"; (2) "[t]he alien's release presents a significant threat to the national security or a significant risk of terrorism"; and (3) "[n]o conditions of release can reasonably be expected to avoid the threat to the national security or the risk of terrorism," then the regulation authorizes ongoing detention, "subject to ongoing review on a semi-annual basis." *Id.*

Both 8 U.S.C. § 1226a and 8 C.F.R. § 241.14(d) refer to certification by the Attorney General. However, the Homeland Security Act of 2002, Pub. L. 107–296, 116 Stat. 2135 (Nov. 25, 2002) abolished the Immigration and Naturalization Service (the "INS"), which was under the auspices of the Attorney General, and transferred the INS' "detention and removal program" to the Department of Homeland Security ("DHS"). *Id.* § 441. Accordingly, the Secretary of DHS is now responsible for certifications under 8 U.S.C. § 1226a and 8 C.F.R. § 241.14(d). *See* 6 U.S.C. §§ 251, 557.

## II.  Petitioner's Background and Criminal History

Petitioner is "a Palestinian who, while born in Lebanon, is not a citizen of Lebanon." *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *1 (W.D.N.Y. Jan. 2, 2019). He was first admitted to the United States in 1989 as a non-immigrant visitor for pleasure, and his status was changed to that of a non-immigrant student in 1990. *Id.* "In 2002, after Petitioner failed to comply with the conditions of his student visa, immigration authorities detained him and instituted removal proceedings," and "Petitioner's order of removal became administratively final in 2003." *Id.*

However, before he could be removed, Petitioner was taken into custody in early 2004 on federal criminal charges. *Id.* Petitioner was ultimately convicted on three charges: "(1) conspiracy to murder, kidnap and maim persons in a foreign country (18 U.S.C. § 956(a)(1)); (2) conspiracy to provide material support for terrorism (18 U.S.C. § 371); and (3) providing material support to terrorists (18 U.S.C. § 2339A(a))." *Id.* Petitioner was sentenced to 188 months in prison and 20 years supervised release. *See United States v. Jayyousi*, 657 F.3d 1085, 1092 (11th Cir. 2011). After completing his term of

imprisonment in October 2017, Petitioner "was again detained by immigration authorities on his original order of removal." *Hassoun*, 2019 WL 78984, at *1. However, United States Immigration and Customs Enforcement ("ICE") has been unsuccessful in removing Petitioner from this country. Lebanon has denied a request for travel documents on the basis that Petitioner is not a Lebanese citizen. (Dkt. 17 at ¶ 7). Representatives of the Palestinian Liberation Organization indicated that "their office would be willing to issue travel documents for Petitioner to enter the territory of the West Bank should Israel, in turn, issue a border crossing authorization," but Israel has not, to date, issued such an authorization. (*Id*. at ¶ 8). ICE has also unsuccessfully sought travel documents for Petitioner from Egypt, Iraq, Somalia, Sweden, and the United Arab Emirates, as well as from three unidentified countries. (*Id*. at ¶¶ 9-10). Petitioner has remained detained in immigration custody since October 2017.

III.    **Petitioner's First Habeas Petition and Detention Under 8 C.F.R. § 241.14(d)**

In May 2018, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contending that he was being unlawfully held by Respondent. *Hassoun*, 2019 WL 78984, at *1. On January 2, 2019, the Hon. Frank P. Geraci, Chief United States District Judge, issued a Decision and Order in which he found that there was no significant likelihood of Petitioner's removal from the United States in the reasonably foreseeable future and concluded that the Government had "exceeded its authority to detain Petitioner under 8 U.S.C. §§ 1227(a)(1)(C) & 1231(a)(6)." *Id*. at *8. Judge Geraci ordered that Petitioner be released on March 1, 2019, "unless the Court orders otherwise," but further held that "[t]he Court's order does not preclude Respondent . . . from continuing to detain

- 5 -

Petitioner on any other permissible basis under applicable statutes and regulations." *Id.* Judge Geraci ordered Respondent to "notify the Court if he determines that Petitioner will be detained on some other permissible basis." *Id.*

On February 22, 2019, Respondent filed a notice informing Judge Geraci that he intended to continue to detain Petitioner beyond March 1, 2019, pursuant to 8 C.F.R. § 241.14. Resp't's Notice of Pet'r's Detention, *Hassoun v. Sessions*, No. 18-CV-586-FPG, Dkt. 55 (W.D.N.Y. Feb. 22, 2019). Respondent's notice explained that ICE had, pursuant to 8 C.F.R. § 241.14(d)(2), provided Petitioner with a "Notice of Intent and Factual Basis to Continue Detention." *Id.* at 2. Judge Geraci thereafter entered a Text Order stating that he had "reviewed the notice and concludes that it complies with the Court's order. No further notice from Respondent is required, and this case remains closed." *Hassoun v. Sessions*, No. 18-CV-586-FPG, Dkt. 58 (W.D.N.Y. Feb. 26, 2019).

On March 2, 2019, Petitioner filed a motion to reopen the proceeding before Judge Geraci. Pet'r's Motion for Expedited Status Conference and Motion to Reopen, *Hassoun v. Sessions*, No. 18-CV-586-FPG, Dkt. 59 (W.D.N.Y. Mar. 2, 2019). Judge Geraci denied Petitioner's motion on March 5, 2019. *Hassoun v. Sessions*, No. 18-CV-586-FPG, Dkt. 60 (W.D.N.Y. Mar. 5, 2019).

On March 11, 2019, Petitioner was served with the administrative record underlying ICE's decision to pursue continued detention. (Dkt. 30-1 at 2). On April 10, 2019, Petitioner submitted a response to ICE's Notice of Intent and Factual Basis to Continue Detention. (*Id.*). ICE contacted Petitioner's representatives on May 1, 2019, concerning

the scheduling of an interview pursuant to 8 C.F.R. § 241.14(d)(3).[1]  (*Id.*).  On May 7, 2019, Petitioner, through his representatives, informed ICE that he declined to participate in an interview.  (*Id.*).

## IV.    The Instant Habeas Proceeding and Petitioner's Detention Under § 1226a

Petitioner commenced the instant action on March 15, 2019.  (Dkt. 1).  He filed an Amended Petition and a memorandum in support thereof on May 14, 2019.  (Dkt. 13; Dkt. 14).  Respondent filed his opposition to the Amended Petition on June 28, 2019.  (Dkt. 17). Petitioner filed a reply on August 9, 2019.  (Dkt. 25).

Also on August 9, 2019, then-Acting Secretary of Homeland Security Kevin K. McAleenan ("Secretary McAleenan") certified Petitioner's continued detention under 8 C.F.R. § 241.14(d).  (Dkt. 30-1).  Secretary McAleenan further certified Petitioner's continued detention as "an alien engaged in terrorist activity and engaged in an activity that endangers the national security of the United States" under § 1226a. (Dkt. 30-2 at 1).

On August 12, 2019, Respondent filed a consent motion for supplemental briefing regarding Petitioner's detention under § 1226a (Dkt. 26), which the Court granted on August 13, 2019 (Dkt. 27).  Petitioner filed a supplemental memorandum in support of his Amended Petition on September 6, 2019.  (Dkt. 28).  Respondent filed a supplemental response on October 1, 2019 (Dkt. 30), and Petitioner filed a supplemental reply on October

---

[1]     This section of the regulation provides that "[a]n immigration officer shall, if possible, conduct an interview in person and take a sworn question-and-answer statement from the alien, and the Service shall provide an interpreter for such interview, if such assistance is determined to be appropriate. . . ."  8 C.F.R. § 241.14(d)(3)(i).

15, 2019 (Dkt. 32). Oral argument was held before the undersigned on November 22, 2019, and the Court reserved decision. (Dkt. 53). On December 6, 2019, Respondent filed a supplemental notice regarding Petitioner's supervised release term. (Dkt. 54).

## DISCUSSION

### I.  Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas*, 533 U.S. at 688 (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). In addition, § 1226a(b) expressly provides that "[j]udicial review of any action or decision" taken thereunder is available in habeas corpus proceedings, which may be commenced in "any district court otherwise having jurisdiction to entertain it." 8 U.S.C. § 1226a(b)(1), (2)(A)(iv).[2]

---

[2] Any appeal of a habeas corpus proceeding challenging detention under 8 U.S.C. § 1226a must be heard by the United States Court of Appeals for the District of Columbia Circuit. 8 U.S.C. § 1226a(b)(3). Moreover, "[t]he law applied by the Supreme Court and the United States Court of Appeals for the District of Columbia Circuit shall be regarded as the rule of decision" in such habeas corpus proceedings. *Id.* § 1226a(b)(4). In other words, while the Court applies the law of the Second Circuit in considering Petitioner's challenge to his detention under 8 C.F.R. § 241.14(d), it must apply the law of the D.C. Circuit in considering his challenge to his detention under § 1226a.

## II.    Petitioner's Supervised Release Term

Before turning to the substance of Petitioner's challenges to his detention under 8 C.F.R. § 241.14(d) and 8 U.S.C. § 1226a, the Court is compelled to address a matter that causes it to be concerned by the representations made by Respondent's counsel, even though not dispositive of the pending issues before the Court.  At oral argument on November 22, 2019, the Court questioned Respondent's counsel as to why, if Petitioner was involved in ongoing criminal activity as claimed by Respondent, he was not charged with violating his supervised release conditions—a regular occurrence in federal court with individuals under supervision, as opposed to the rarely used methods that Respondent seeks to rely upon to detain Petitioner.  At oral argument, Respondent's counsel had no good answer.

However, two weeks later, Respondent's counsel filed a supplemental notice, stating that "it does not consider Petitioner's term of supervised release to have commenced" because he was released from the Bureau of Prisons ("BOP") to another federal agency.[3] (Dkt. 54 at 2).  Respondent's counsel represented that it had "consulted with Department of Justice prosecutors and appellate attorneys in this District, the Southern District of Florida, and the Department's Criminal and National Security Divisions" to formulate this response (*id.* at 3), and in support of its position, Respondent's counsel cited to two Supreme Court decisions (*id.* at 2).  However, neither Supreme Court case addressed

---

[3]    This newfound position by Respondent directly contradicts its statement in its filing on October 1, 2019, that Petitioner "is now on a 20-year period of supervised release." (Dkt. 30 at 36).

this particular issue. *See Mont v. United States*, ___ U.S. ___, 139 S. Ct. 1826 (2019) (holding that pretrial criminal detention later credited as time served for a new conviction tolled period of supervised release); *United States v. Johnson*, 529 U.S. 53 (2000) (holding that excess time in federal prison that is subsequently reduced because convictions vacated is not credited to supervised release term). Respondent's counsel also cited a decision from the Fifth Circuit Court of Appeals—*United States v. Jackson*, 426 F.3d 301 (5th Cir. 2005) (Dkt. 54 at 3), but again, that case did not address the issue presented here, instead holding that incarceration for a parole violation that is later held unconstitutional by a state court tolls a defendant's supervised release term, *see* 426 F.3d at 305.

Some quick research by Respondent's counsel would have revealed that there are cases addressing whether ICE custody tolls commencement of a supervised release term and those cases do not support Respondent's position. In fact, simply clicking on the Westlaw "yellow flag" that appears at the top of the *Jackson* decision would have led Respondent's counsel to the decision in *United States v. Garcia-Rodriguez*, 640 F.3d 129 (5th Cir. 2011), where the Fifth Circuit Court of Appeals expressly declined to extend *Jackson* to the immigration context and held that the defendant was released from imprisonment and commenced supervised release immediately upon his transfer from BOP to ICE custody. In other words, as explained by the Fifth Circuit, while "administrative detention and subsequent deportation by ICE may be related to a crime [previously committed by the defendant], that relationship does not turn such detention into 'imprisonment' as contemplated by [18 U.S.C.] § 3624(e)" for purposes of tolling commencement of a supervised release term. *Id.* at 134. Other courts have reached similar

- 10 -

conclusions. *See United States v. Peddie*, No. 13-69 (RC), 2019 WL 4686552, at *2 (D.D.C. Sept. 26, 2019) ("ICE custody is not 'imprisonment' for purpose of the [supervised release] statute because it is only civil detention, not associated with a conviction for a crime."); *United States v. Astorga*, No. CR S-99-0270 WBS GGH, 2008 WL 2446119, at *2 (E.D. Cal. June 12, 2008) ("Simply being held in administrative custody for deportation is not custody for a 'crime,' and Astorga's criminal incarceration expired with his release from that custody. . . . Simply because a latter administrative detention following the criminal incarceration is 'related to' the conviction at issue does not make it incarceration for a crime. Supervised release was not tolled by administrative detention."), *aff'd*, 457 F. App'x 698 (9th Cir. 2011). Although it does not appear that the Second Circuit has addressed whether ICE custody tolls commencement of a supervised release term, it has cited the Fifth Circuit's decision in *Garcia-Rodriguez* to distinguish a situation involving criminal custody in state court in a case handled by the United States Attorney's Office in this District. *See United States v. Bussey*, 745 F.3d 631, 633 (2d Cir. 2014).

To say the least, it is disappointing that Respondent's counsel, after consulting with other counsel including "prosecutors and appellate attorneys" in this District's United States Attorney's office, submitted a legal memorandum to the Court that failed to acknowledge contrary case law that did not support its position.

## III.    Detention Under 8 C.F.R. § 241.14(d)

Petitioner argues that his continued detention is not lawfully authorized by 8 C.F.R. § 214.14(d). In particular, Petitioner contends that: (1) 8 C.F.R. § 241.14(d) is inconsistent with the Supreme Court's authoritative construction of § 1231(a)(6), and the Government's

continued detention of Petitioner thereunder is accordingly *ultra vires*; (2) Petitioner's continued detention under 8 C.F.R. § 241.14(d) violates his right to substantive due process; (3) Petitioner's continued detention under 8 C.F.R. § 241.14(d) violates his right to procedural due process; (4) 8 C.F.R. § 241.14(d) is unconstitutionally vague; (5) 8 C.F.R. § 241.14(d) violates Petitioner's right to the equal protection of the laws; and (6) Petitioner in any event does not satisfy the requirements for continued detention under 8 C.F.R. § 241.14(d). (Dkt. 14)[4]. For the reasons discussed below, the Court agrees with Petitioner that 8 C.F.R. § 241.14(d) is inconsistent with § 1231(a)(6), and that it accordingly is without legal effect. As a result, the Court need not and does not reach Petitioner's additional arguments regarding the regulation's viability.

It is well-established that Congress may delegate to a federal administrative officer or agency "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297

---

[4] In his Petition, Petitioner also asserts that his detention violates his right against double jeopardy. (*See* Dkt. 1 at ¶¶ 97-99). However, Petitioner has not developed this argument, instead merely stating in a footnote that the "overlap" between his criminal conviction and the current basis for his detention "raises constitutional concerns beyond substantive due process, including Mr. Hassoun's right against double jeopardy." (Dkt. 14 at 28 n.9). The relegation of this argument to a footnote relieves the Court of any burden to consider it. *See, e.g., F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n.1 (S.D.N.Y. 2014) ("It is well settled . . . that a court need not consider arguments relegated to footnotes[.]"); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 256 n.4 (S.D.N.Y. 2009) ("[B]ecause the argument is made wholly in a footnote . . ., the Court may choose to disregard it."); *cf. Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." (quotation omitted)). In any event, the Court is not persuaded that double jeopardy is implicated in this case, in particular because 8 C.F.R. § 241.14(d) expressly requires a finding of ongoing dangerousness.

U.S. 129, 134 (1936). However, "[a] regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." *Id.*; *see also Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) ("It is a basic tenet that regulations, in order to be valid, must be consistent with the statute under which they are promulgated." (quotation omitted)); *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) ("[The Court] cannot uphold a regulation that is inconsistent with both the plain meaning and purpose of the statute."). In this case, 8 C.F.R. § 241.14 was promulgated under § 1231(a)(6). Petitioner argues that 8 C.F.R. § 241.14(d), which authorizes indefinite civil detention under certain circumstances, is inconsistent with the Supreme Court's construction of § 1231(a)(6), as set forth in *Zadvydas* and *Clark*. (*See* Dkt. 14 at 16-22). The Court agrees, for the reasons discussed below.

Neither the Supreme Court nor any circuit court of appeals has considered the validity of 8 C.F.R. § 241.14(d).[5] However, the Fifth, Ninth, and Tenth Circuits have addressed another subsection of 8 C.F.R. § 241.14—namely, § 241.14(f)—and reached differing conclusions regarding its validity. Subsection (f) of § 241.14 permits the potentially indefinite detention of "aliens determined to be specially dangerous"— particularly, aliens who have committed certain enumerated "crimes of violence," and who "[d]ue to a mental condition or personality disorder and behavior associated with that

---

[5]     This is not surprising, since according to Petitioner (and confirmed by Respondent's counsel at oral argument), this is only the second time 8 C.F.R. § 241.14(d) has been invoked since its promulgation in 2001. (*See* Dkt. 14 at 38).

condition or disorder, . . . [are] likely to engage in acts of violence in the future." 8 C.F.R. § 241.14(f)(1).

In *Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004), the petitioner was a native and citizen of Vietnam who had "established a record as a violent criminal, accumulating convictions for assault, harassment, and third-degree rape." *Id.* at 792. The government had been unable to remove him "[d]ue to the lack of a repatriation agreement between the United States and Vietnam. . . ." *Id.* The district court concluded on habeas review that 8 C.F.R. § 241.14(f) was not valid, *id.* at 793, and the Ninth Circuit affirmed that determination on appeal, *id.* at 798-99. In particular, the Ninth Circuit concluded that § 1231(a)(6) could not "properly be read to . . . allow[] the indefinite detention of dangerous resident aliens like Thai," because "[a]n alien's ill mental health coupled with dangerousness cannot justify indefinite detention under *Zadvydas*." *Id.* at 798.

In *Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008), the Fifth Circuit considered circumstances similar to those in *Thai*. The *Tran* petitioner was also a native and citizen of Vietnam, who had "murdered his wife in the presence of their seven-year-old daughter," and who was detained under 8 C.F.R. § 241.14(f). *Id.* at 480. The Fifth Circuit, citing *Zadvydas* and *Clark*, concluded that "[t]he Supreme Court has twice held that § 1231(a)(6) does not authorize indefinite detention for any class of aliens covered by the statute," and that "[a]ccordingly, 8 C.F.R. § 241.14, which was enacted under the authority of § 1231(a)(6), cannot authorize Tran's indefinite detention." *Id.* at 484.

However, the Tenth Circuit reached a contrary result in *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008). There, the petitioners were natives and citizens

of Cuba who had been found specially dangerous as defined in 8 C.F.R. § 241.14(f). *Id.* at

1242-44. The Tenth Circuit explained that pursuant to the Supreme Court's holding in

*National Cable & Telecommunications Association v. Brand X Internet Services.*, 545 U.S.

967 (2005), "a court's—even the Supreme Court's—prior interpretation of a statute that an

agency is empowered to administer forecloses an agency's reasonable construction only if

the relevant judicial decision held the statute to be unambiguous." *Hernandez-Carrera*,

547 F.3d at 1248 (citing *Brand X*, 545 U.S. at 984); *see also Brand X*, 545 U.S. at 982 ("A

court's prior judicial construction of a statute trumps an agency construction otherwise

entitled to *Chevron*[6] deference only if the prior court decision holds that its construction

follows from the unambiguous terms of the statute and thus leaves no room for agency

discretion."). The Tenth Circuit further disagreed with the outcome in *Thai* and *Tran*,

concluding that "the Fifth and Ninth Circuits erred by concluding that the Supreme Court

could authoritatively and finally interpret § 1231(a)(6)," because the Supreme Court had

"specifically found the statute to be ambiguous," and had further "explicitly recognized

that its construction of the statute was not the only reasonable one possible." *Id.* at 1249.

The *Hernandez-Carrera* court went on to conclude that "the agency's revised interpretation

of § 1231(a)(6) [as reflected in 8 C.F.R. § 241.14] is reasonable, and therefore owed

*Chevron* deference," and that "[t]he Attorney General's construction of 8 U.S.C.

§ 1231(a)(6), as interpreted in 8 C.F.R. § 241.14 avoids the constitutional and interpretive

---

[6]      *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837
(1984).

problems recognized in *Zadvydas* and [*Clark*]." *Id.* at 1256; *see also Marquez-Coromina v. Hollingsworth*, 692 F. Supp. 2d 565, 574 (D. Md. 2010) (adopting the reasoning set forth in *Hernandez-Carrera* and concluding that "8 C.F.R. § 241.14(f)(1) is a reasonable interpretation of 8 U.S.C. § 1231(a)(6) entitled to *Chevron* deference").

In this case, Respondent does not rely on the analysis set forth in *Hernandez-Carrera* to argue that 8 C.F.R. § 241.14(d) is lawful. Instead, Respondent argues that even under *Zadvydas* and *Clark*, "the Secretary may . . . under regulations promulgated to constrain the discretion to detain in accordance with the principles enunciated by the Supreme Court, continue to detain a specially dangerous alien who presents a significant threat to the national security or risk of terrorism, and for whom the Secretary determines no conditions of release can reasonably be expected to avoid the threat or risk." (Dkt. 17-4 at 22). In support of this proposition, Respondent relies upon former-Judge Kozinski's dissent from denial of the government's request for rehearing *en banc* in the *Thai* case. (*See id.*).

The Court is not persuaded that 8 C.F.R. § 241.14(d) is a permissible interpretation of § 1231(a)(6) based on either Respondent's position or the Tenth Circuit's analysis in *Hernandez-Carrera*. Turning first to Respondent's arguments, it is true that the Supreme Court stated in *Zadvydas* that it did not "consider terrorism or other special circumstances where special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to matters of national security." 533 U.S. at 696. As such, it is arguable that *Zadvydas*, standing alone,

left open the possibility for a more narrowly tailored regulation such as the one at issue here.

However, *Zadvydas* does not stand alone. Less than four years later, in *Clark*, the Supreme Court unequivocally foreclosed any reading of § 1231(a)(6) that differentiated between the classes of aliens covered thereby. In particular, the *Clark* court rejected the argument that § 1231(a)(6) could be read as having "a different meaning" when a particular class of aliens was involved, explaining that "[i]t is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation. The lowest common denominator, as it were, must govern." 543 U.S. at 380. The *Clark* court went on to explain that "to sanction indefinite detention [under § 1231(a)(6)] in the face of *Zadvydas* would establish within our jurisprudence, beyond the power of Congress to remedy, the dangerous principle that judges can give the same statutory text different meanings in different cases." *Id.* at 386. In the face of this clear language by the Supreme Court, Respondent's contention that *Zadvydas* and *Clark* can be reconciled with a reading of § 1231(a)(6) that authorizes indefinite detention for any alien who falls within its provisions lacks merit. *See Tran*, 515 F.3d at 484 (finding that under *Clark* and *Zadvydas*, "§ 1231(a)(6) does not authorize indefinite detention <u>for any class of aliens covered by the statute</u>" (emphasis added)). Former-Judge Kozinski's dissent in *Thai* does not change the Court's analysis, among other reasons because it was authored before the Supreme Court issued the *Clark* decision and therefore did not take into account *Clark's* clear teaching that § 1231(a)(6) cannot be differentially applied.

While Respondent did not rely on *Hernandez-Carrera* in his brief, counsel suggested at oral argument that the Tenth Circuit's approach was an alternative method by which the Court could find 8 C.F.R. § 241.14(d) to be a valid interpretation of § 1231(a)(6). The Court finds, for the reasons set forth below, that the approach taken by the Tenth Circuit in *Hernandez-Carrera* does not save 8 C.F.R. § 241.14(d).

The *Hernandez-Carrera* court, relying on *Brand X*, held that "if an agency initially construed a statute in a manner raising constitutional doubts—an interpretation that *Zadvydas* makes clear that a court would be right to reject—this would not foreclose the agency from later construing the statute in a different manner that avoids those doubts." 547 F.3d at 1250-51. Under this approach, the Court must then ask "whether the agency's construction of 8 U.S.C. § 1231(a)(6) . . . avoids raising serious constitutional doubts." *Id.* at 1251. In other words, *Brand X* and *Hernandez-Carrera* do not stand for the proposition that an agency is entitled to deference if, in response to a court's construction of a statute, it interprets that statute in a different, constitutionally suspect manner. Accordingly, just as the *Hernandez-Carrera* court did, this Court is obliged to consider whether the section of 8 C.F.R. § 241.14 relied upon to detain Petitioner raises serious constitutional doubts.

The *Hernandez-Carrera* court found that 8 C.F.R. § 241.14(f)(1) did not raise serious constitutional doubts, largely because of the robust procedural protections contained in that section of the regulation. Those procedural protections include placing the burden of proof on DHS to prove dangerousness by clear and convincing evidence and providing a hearing before an immigration judge at which "the alien has the opportunity to examine evidence against him, present evidence in his behalf, and cross-examine witnesses

- 18 -

or any authors of medical or mental health reports used as a basis for his continued detention." *Id.* at 1253-54. None of these procedural protections apply to Petitioner's detention under 8 C.F.R. § 241.14(d). Instead, under that section of the regulation, the affected alien is "notified of the Service's intention to continue the alien in detention and of the alien's right to submit a written statement and additional information for consideration." *Id.* § 241.14(d)(2). "To the greatest extent consistent with protection of the national security and classified information," the notice must contain "a description of the factual basis for the alien's continued detention," and the alien must be provided "a reasonable opportunity to examine evidence against him or her, and to present information on his or her own behalf." *Id.* § 241.14(d)(2)(i),(ii). If possible, an immigration officer shall conduct an in-person interview of the alien, at which the alien "may be accompanied . . . by an attorney or other representative of his or her choice." *Id.* § 241.14(d)(3)(i),(ii). Thereafter, ICE must consider enumerated factors, and make a recommendation to the Secretary of DHS regarding whether detention should be continued. *Id.* § 241.14(d)(4),(5). The Secretary of DHS then must review the record compiled by ICE and determine whether the alien should continue to be detained. *Id.* § 241.14(d)(6). Before reaching a determination, the Secretary of DHS may "order any further procedures or reviews as may be necessary under the circumstances to ensure the development of a complete record." *Id.* If the Secretary of DHS certifies that an alien should continue to be detained, that certification "is subject to ongoing review on a semi-annual basis." *Id.* § 241.14(d)(7).

The Court agrees with Petitioner that these minimal procedures raise significant procedural due process concerns, thereby distinguishing 8 C.F.R. § 241.14(d) from the

section of the regulation involved in *Hernandez-Carrera*. As the Supreme Court has explained, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted). "Due process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). In considering the process due, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[7]

Applying this well-established case law, the Court finds that 8 C.F.R. § 241.14(d) does not provide procedural due process. The liberty interest at stake in this case is of the

---

[7] Respondent makes a threshold argument that Petitioner lacks standing to challenge the regulation's procedures, because he declined to participate in the offered interview. (Dkt. 21 at 28-29). The Supreme Court has rejected the argument that a litigant must exhaust his remedies before mounting a procedural due process challenge. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 70-71 (2009) (holding that prisoner was not required to invoke state's "newly developing procedures for obtaining postconviction access to DNA" prior to mounting a due process challenge thereto). Respondent has cited two out-of-circuit district court cases in support of his claim that "[p]rejudice cannot be shown by a litigant who does not take advantage of the available detention-review procedures" (*see* Dkt. 17-4 at 28), neither of which addressed circumstances comparable to those present here. Moreover, the Court agrees with Petitioner that he should not be penalized for declining to participate in an interview with an immigration officer, given the lack of procedural protections associated with such interview and the fact that Petitioner did submit a response to ICE's notice that it intended to continue his detention. The Court accordingly rejects Respondent's standing argument.

highest order, inasmuch as Petitioner (and any other individual potentially detained under 8 C.F.R. § 241.14(d)) faces the possibility of indefinite civil detention. However, the Court notes that the Government's interest in protecting the public from terrorism is also very weighty, and that the Supreme Court has cautioned that "[i]n considering both the procedural and substantive standards used to impose detention to prevent acts of terrorism, proper deference must be accorded to the political branches." *Boumediene v. Bush*, 553 U.S. 723, 796 (2008). Accordingly, the Court finds that the second *Mathews* factor—the risk of erroneous deprivation—is of particularly great weight.

Petitioner argues the risk of erroneous deprivation is high because 8 C.F.R. § 241.14(d) does not provide him with "(1) the presence of a neutral decision maker; (2) the presence of a clear burden and adequate standard of proof; and (3) the ability to meaningfully examine and refute the government's evidence and witnesses, and to present evidence." (Dkt. 14 at 32). The Court agrees that the procedure set forth in 8 C.F.R. § 241.14(d) is insufficient to protect against an impermissible risk of erroneous deprivation. In this regard, the Court finds it particularly significant that 8 C.F.R. § 241.14(d) (unlike other subsections of 8 C.F.R. § 241.14) does not provide for any review by a neutral decisionmaker. The *Zadvydas* Court expressly noted that "the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights." 533 U.S. at 692. Moreover, in *Bailey v. Pataki*, 708 F.3d 391 (2d Cir. 2013), the Second Circuit held that due process required that "the decision as to whether to [civilly] commit [sexually dangerous individuals]" be "undertaken by a neutral decisionmaker with the benefit of an adversarial hearing." *Id.* at

403; *see also Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 617-18 (1993) ("[D]ue process requires a neutral and detached judge in the first instance," and "[e]ven appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator." (quotation omitted))[8]. The process set forth by 8 C.F.R. § 241.14(d), in which DHS essentially serves as both prosecutor and judge, does not satisfy this fundamental due process right.

The cases cited by Respondent are inapposite. *Guzman v. Tippy*, 130 F.3d 64 (2d Cir. 1997) involved individuals who had been excluded from the United States, and "[a]n excluded alien's rights are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment." *Id.* at 66; *see also Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Similarly, *United States ex rel. Kordic v. Esperdy*, 386 F.2d 232 (2d Cir. 1967) dealt with the particular circumstances of the legal status of foreign crewmen, whom the Second Circuit

---

[8]     Respondent's argument that the potential for habeas review provides an opportunity for review by a neutral judge (*see* Dkt. 21 at 33) is inconsistent with this clear precedent, because Respondent has also taken the position that 8 U.S.C. § 1252(a)(2)(B)(ii) prohibits this Court (or any other court presiding over a habeas proceeding) from reviewing the DHS Secretary's factual determinations (*see* Dkt. 17-4 at 48-49). This Court cannot qualify as the necessary neutral decisionmaker if, as Respondent contends, "the agency's bottom-line factual conclusion . . . is untouchable." (*Id.*). Moreover, Respondent's citation to *Hernandez-Carrera* is misplaced. As already noted, the subsection of 8 C.F.R. § 241.14 at issue in *Hernandez-Carrera* expressly provides for review by an immigration judge. *See* 8 C.F.R. § 241.14(g) (establishing jurisdiction for an immigration judge to review a determination under 8 C.F.R. § 241.14(f)).

noted did not fit into the category of aliens whose "presence is recognized as an 'entry' in law." *Id.* at 235.

The other two cases cited by Respondent both involved detention procedures that included a hearing before a neutral decisionmaker. *See United States v. Comstock*, 560 U.S. 126, 130 (2010) (considering statute where commitment decision is made by district court judge); *Kansas v. Hendricks*, 521 U.S. 346, 352-53 (1997) (considering statute where commitment decision is made by state court judge). Accordingly, neither of these cases supports Respondent's position that due process will countenance a procedure whereby the Secretary of DHS (the agency that seeks to detain an individual) is the final decisionmaker. Due process may be flexible, but "essential constitutional promises" such as an impartial decisionmaker "may not be eroded." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (concluding that "a citizen-detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker" (emphasis added)).

The Court also agrees with Petitioner that, given the liberty interest at stake, the absence of any articulated standard of proof in 8 C.F.R. § 241.14(d) fails to satisfy the requirements of procedural due process. In *Addington v. Texas*, 441 U.S. 418 (1979), the Supreme Court considered the appropriate burden of proof in the context of civil commitment, and concluded that while the reasonable doubt standard used in criminal cases was not necessary, "the preponderance standard falls short of meeting the demands of due process." *Id.* at 431. Accordingly, the Supreme Court found that the appropriate

- 23 -

standard was clear and convincing evidence, which it described as "a middle level of burden of proof that strikes a fair balance between the rights of the individual and the legitimate concerns of the state." *Id.* The Court finds the reasoning of *Addington* persuasive in this context. The *Addington* court noted the difficulty inherent in proving dangerousness (as opposed to the "straightforward factual question—did the accused commit the act alleged" presented in the criminal context, *id.* at 429), but also observed that the preponderance standard—which Respondent argues is sufficient here—increases the risk of inappropriate confinement and fails to impress upon the factfinder the importance of the decision to deprive an individual of his or her liberty, *id.* at 426-27. These same considerations are present here, and lead the Court to conclude that the failure to impose a clear and convincing evidence standard in 8 C.F.R. § 241.14(d) violates the requirements of procedural due process in the framework of this regulation.[9]

Moreover, the Court finds that the additional procedural safeguards discussed above would be minimally burdensome to the Government. The Court's decision in this regard is partly informed by the fact that 8 C.F.R. § 241.14(f) provides a far more robust process, including review by an immigration judge and the requirement that ICE show a special danger by clear and convincing evidence. In addition, the record demonstrates that 8

---

[9]     Petitioner has also argued that he was deprived of the opportunity to meaningfully examine the Government's evidence and witnesses and to present his own witnesses. (Dkt. 14 at 32). The Court finds the record somewhat underdeveloped on this point. However, because the Court otherwise agrees with Petitioner that 8 C.F.R. § 241.14(d) fails, on its face, to comport with the requirements of procedural due process, the Court need not and does not reach these issues.

C.F.R. § 241.14(d) is rarely invoked by the Government. The Court agrees with Petitioner that providing additional procedural protections in such a small number of cases would not be a significant burden nor impair the Government's interest in protecting national security. *See Boumediene*, 553 U.S. at 797 ("Security subsists, too, in fidelity to freedom's first principles. Chief among these being freedom from arbitrary and unlawful restraint.").

For the reasons set forth above, the Court agrees with Petitioner that reading § 1231(a)(6) to permit indefinite detention pursuant to the procedures set forth in 8 C.F.R. § 241.14(d) would, at a minimum, raise serious questions regarding the constitutional adequacy of its procedures. Because 8 C.F.R. § 241.14(d) does not "sufficiently avoid[] raising constitutional doubts," *Hernandez-Carrera*, 547 F.3d at 1251, it is not entitled to any deference by this Court. Instead, the Court follows the Supreme Court's holdings in *Zadvydas* and *Clark* in interpreting § 1231(a)(6), and, consistent with those cases, concludes that § 1231(a)(6) does not allow for indefinite detention of any class of aliens that it covers.

For all these reasons, the Court finds that 8 C.F.R. § 241.14(d) is not a permissible reading of § 1231(a)(6), and that it is accordingly a legal nullity that cannot authorize the ongoing, potentially indefinite detention of Petitioner. *See Tran*, 515 F.3d at 484 ("8 C.F.R. § 241.14, which was enacted under the authority of § 1231(a)(6), cannot authorize [the petitioner's] indefinite detention.").

IV.    **Detention under 8 U.S.C. § 1226a**

Petitioner also contends that he is not lawfully detained pursuant to § 1226a. With respect to this statute, Petitioner argues: (1) § 1226a does not apply to Petitioner; (2)

§ 1226a violates Petitioner's right to substantive due process; (3) § 1226a violates Petitioner's right to procedural due process; (4) § 1226a violates Petitioner's right to the equal protection of the laws; and (5) that in the event the Court does not invalidate § 1226a, it should hold an evidentiary hearing and make a *de novo* determination of whether Petitioner's detention is warranted thereunder. (Dkt. 28).

For all the reasons described above, the Court finds that it is not required to afford deference to 8 C.F.R. § 241.14(d), a regulation promulgated by the Attorney General. However, the same cannot be said of § 1226a, a statute passed by Congress and signed into law by the President. This Court owes considerable deference to "the duly enacted and carefully considered decision of a coequal and representative branch of our Government," *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 251 (1990) (quotation omitted), and "[i]t is not the province of this court to lightly brush aside an act of Congress as violative of constitutional principles, no matter how limited in scope its application may be," *United States v. Turner Bros.*, 11 F. Supp. 908, 910 (E.D.N.Y. 1935). Moreover, this Court, like all federal courts, must "avoid unnecessary constitutional adjudication." *Nicholson v. Scoppetta*, 344 F.3d 154, 170 (2d Cir. 2003). Guided by these principles, the Court finds it imperative to have a full and complete record before reaching any conclusions regarding the constitutionality of § 1226a and its applicability to Petitioner.

The Court further finds that it has full authority under § 1226a to hold an evidentiary hearing and that such a hearing is warranted in this case. As noted above, § 1226a expressly provides for habeas corpus review of "any action or decision relating to this section (including judicial review of the merits of a determination made under subsection (a)(3) or

- 26 -

(a)(6)). . . ." 8 U.S.C. § 1226a(b)(1) (emphasis added). It is well-established that "[i]n cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2),[10] the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007); *see also Al-Bihani v. Obama*, 590 F.3d 866, 881 (D.C. Cir. 2010) ("[C]ourts . . . have the discretion to grant fact hearings upon a proper showing by a petitioner. . . ."); *cf.* 28 U.S.C. § 2246 ("On application for a writ of habeas corpus, evidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit.").

In this case, the Court, in its discretion, finds that the current record is insufficient to permit it to perform the merits review anticipated by § 1226a(b)(1). The Court further finds that an evidentiary hearing is the appropriate mechanism by which to remedy this insufficiency. *Cf. United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003) (remanding for conduct of an evidentiary hearing in habeas case where the record did not "conclusively establish[] that [the petitioner was] not entitled to relief").

## CONCLUSION

For the reasons set forth above, the Court finds that Petitioner's continued detention is not lawfully authorized by 8 C.F.R. § 241.14(d). The Court further finds that an evidentiary hearing is necessary before it can determine the lawfulness of Petitioner's continued detention under 8 U.S.C. § 1226a.

---

[10]     This statutory provision applies only to individuals in state custody and so has no bearing on Petitioner, who is held in federal custody.

A telephone status conference to discuss the evidentiary hearing is hereby scheduled for <u>Friday, December 20, 2019, at 9:15 AM</u>. Counsel will be sent call-in instructions. During the telephone status conference, counsel should be prepared to discuss, among other issues, the location and scheduling of the evidentiary hearing; whether discovery is needed in advance of the evidentiary hearing and, if so, the extent of any such discovery; and the parameters of any evidentiary hearing, including the burden and standard of proof, and any proposed limitations on the presentation of witnesses and documentary evidence. Counsel for both parties are encouraged to confer in advance of the telephone status conference to ascertain those points on which mutual agreement may be reached.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        December 13, 2019
              Rochester, New York