UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
JAN 2 4 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

ADHAM AMIN HASSOUN,

        Petitioner,

      v.

JEFFREY SEARLS, in his official
capacity as Acting Assistant Field Office
Director and Administrator of the Buffalo
Federal Detention Facility,

        Respondent.

**DECISION AND ORDER**

1:19-CV-00370 EAW

## **INTRODUCTION**

Petitioner Adham Amin Hassoun ("Petitioner") is a civil immigration detainee currently housed at the Buffalo Federal Detention Facility (the "BFDF") in Batavia, New York. Respondent Jeffrey Searls ("Respondent") is administrator of the BFDF. Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1226a(b), arguing that his current detention is unauthorized by lawful statute or regulation and that he must be released, with appropriate conditions of supervision. Respondent contends that Petitioner is lawfully detained pursuant to both 8 U.S.C. § 1226a(a) and 8 C.F.R. § 241.14(d).

On December 13, 2019, the Court entered a Decision and Order (Dkt. 55) finding that Petitioner's continued detention is not lawfully authorized by 8 C.F.R. § 241.14(d) and that an evidentiary hearing is necessary before the Court can determine the lawfulness of

- 1 -

Petitioner's continued detention pursuant to 8 U.S.C. § 1226a. The instant Decision and Order addresses the parameters of the forthcoming evidentiary hearing, which has been scheduled to commence on April 28, 2020. (Dkt. 71).

## **BACKGROUND**

The legal and factual background of this action are set forth in detail in the Court's Decision and Order of December 13, 2019 (Dkt. 55), familiarity with which is assumed for purposes of the instant Decision and Order. The Court summarizes the relevant procedural developments below.

Following the Court's determination that an evidentiary hearing is required in this matter, a status conference was held on December 20, 2019. (Dkt. 55; Dkt. 57). At the status conference, the Court and the parties discussed the parameters of the evidentiary hearing, and the Court ordered briefing thereon, including but not limited to the applicable burden and standard of proof. (Dkt. 58).

On January 6, 2020, the parties filed briefs regarding the parameters of the evidentiary hearing. (Dkt. 60; Dkt. 61). The parties filed responsive briefs on January 13, 2020. (Dkt. 63; Dkt. 67).[1]

A further status conference was held on January 17, 2020. (Dkt. 58; Dkt. 70). At that status conference, the Court announced that it had reached the following conclusions: (1) at the evidentiary hearing, Respondent will bear the burden of demonstrating by clear

---

[1] The parties also submitted status reports regarding outstanding discovery disputes. (Dkt. 65; Dkt. 66). The Court has issued a scheduling order that provides for the filing of discovery motions by February 28, 2020. (Dkt. 71).

and convincing evidence that the factual predicate for continued detention under 8 U.S.C. § 1226a(a)(6) is met in this case; (2) Petitioner must bear the burden of demonstrating that the identity of the confidential informants in this case should be revealed; (3) hearsay evidence will be admissible at the evidentiary hearing if the party seeking to introduce such evidence can demonstrate that such evidence is reliable and that it would be unduly burdensome to submit non-hearsay evidence; and (4) the evidentiary hearing will be held at the federal courthouse in Buffalo, New York. The Court further explained that the scope of the evidentiary hearing would be solely whether there was a factual basis for Petitioner's continued detention under 8 U.S.C. § 1226a(a)(6) and not whether there was a factual basis for the initial certification of Petitioner under 8 U.S.C. § 1226a(a)(3). The Court informed the parties that a written decision memorializing these conclusions and the reasons therefor would be forthcoming. This Decision and Order fulfills that purpose.

## DISCUSSION

### I.     Scope of the Evidentiary Hearing

As a threshold matter, the Court clarifies the scope of the evidentiary hearing it has ordered. Assuming that § 1226a is constitutional, Petitioner's continued detention thereunder is warranted only if: (1) there are "reasonable grounds to be believe" that Petitioner "is described in section 1182(a)(3)(A)(i), 1182(a)(3)(A)(iii), 1182(a)(3)(B), 1227(a)(4)(A)(i), 1227(a)(4)(A)(iii), or 1227(a)(4)(B) of [8 U.S.C.]" or "is engaged in any other activity that endangers the national security of the United States," 8 U.S.C. § 1226a(a)(3); and (2) Petitioner's release would "threaten the national security of the United States or the safety of the community or any person," *id.* § 1226a(a)(6).

At the status conference held on December 20, 2019, Respondent inquired as to whether the evidentiary hearing would be addressed to the factual determination under § 1226a(a)(3) or (a)(6). (*See* Dkt. 68 at 24). Petitioner's counsel stated that it was Petitioner's position that the evidentiary hearing would be "limited to (a)(6)." (*Id.*). However, in his brief regarding the parameters of the evidentiary hearing, Petitioner stated that Respondent "bears the burden of proving both that [Petitioner] was properly certified under (a)(3) and that his continued indefinite detention is justified under (a)(6)," but that "[c]ounsel expects the evidentiary hearing to focus on" the § 1226a(a)(6) determination. (Dkt. 60 at 9-10 & n.3 (emphases omitted)). Respondent has asked the Court to "clearly identify on the written record which provision of . . . § 1226a is the subject of the evidentiary hearing." (Dkt. 63 at 18).

The Court ordered an evidentiary hearing in this case because it is not clear, on the current record, whether the factual predicate for continued detention under § 1226a(a)(6) is satisfied. With respect to the factual determination required by § 1226a(a)(3), there does not appear to the Court to be any additional development of the record required. In particular, § 1226a(a)(3) includes within its purview aliens described in 8 U.S.C. § 1182(a)(3)(B). In turn, 8 U.S.C. § 1182(a)(3)(B)(i)(I) provides that "[a]ny alien who has engaged in a terrorist activity . . . is inadmissible." "Engaged in terrorist activity" is defined to include "commit[ing] an act that the actor knows, or reasonably should know, affords material support . . . to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity" or "to a terrorist organization . . . or to any member of such an organization. . . ." *Id.* § 1182(a)(3)(B)(iv)(VI)(bb), (cc), and

(dd). As the Court noted in its earlier Decision and Order, Petitioner was criminally convicted of "conspiracy to provide material support for terrorism" and "providing material support to terrorists." (Dkt. 55 at 4).

Petitioner has not identified any factual disputes regarding whether he is an alien described by 8 U.S.C. § 1182(a)(3)(B), which is sufficient to satisfy the factual requirements of § 1226a(a)(3). Moreover, while Petitioner has made legal arguments regarding the propriety of the § 1226a(a)(3) certification, those legal arguments are not the reason an evidentiary hearing was ordered. The subject of the evidentiary hearing is whether the factual basis for continued potentially indefinite detention under § 1226a(a)(6) is satisfied—that is, whether Petitioner's release would threaten the national security of the United States or the safety of the community or any person. The evidence submitted by the parties should be addressed to that issue.

## II.    **Standard and Burden of Proof**

The Supreme Court "consistently has recognized that an individual challenging his detention may not be held at the will of the Executive without recourse to some proceeding before a neutral tribunal to determine whether the Executive's asserted justifications for that detention have basis in fact and warrant in law." *Hamdi v. Rumsfeld*, 542 U.S. 507, 528 (2004) (plurality opinion). However, the parameters of such proceedings may vary with the circumstances, because:

> due process is flexible and calls for such procedural protections as the particular situation demands. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (quotation and alteration omitted).

Having determined that an evidentiary hearing is required in this matter, the Court must decide which party will bear the burden of proof at said hearing, and what standard that party must meet to satisfy that burden.[2] Petitioner argues it is well-established that in habeas proceedings involving civil detention, the government must bear the burden of proof. (Dkt. 60 at 8). Petitioner further contends that due process demands that the standard of proof be beyond a reasonable doubt. (*See id.* at 13-16). Respondent, unsurprisingly, disagrees, arguing that the burden is on Petitioner to prove "by a preponderance of the evidence that his detention is unlawful." (Dkt. 61 at 1). Respondent goes on to argue that "[s]hould the Court disagree that Petitioner bears the burden at the evidentiary hearing, the standard on the government should also be preponderance of the evidence." (*Id.* at 5).

As was confirmed at oral argument on November 22, 2019, this is the first time since its promulgation in 2001 that the government has ever invoked § 1226a to justify the ongoing, potentially indefinite detention of a detainee. (*See* Dkt. 56 at 51). Accordingly, no other court has ever considered the standards for the habeas review expressly anticipated by § 1226a(b), and the Court is writing on something of a blank state. However, there is a fairly robust body of law related to habeas corpus petitions brought by individuals

---

[2]     Throughout this Decision and Order, the Court has, as it is required to do, applied the substantive law of the District of Columbia Circuit. *See* 8 U.S.C. § 1226a(b)(4) ("The law applied by the Supreme Court and the United States Court of Appeals for the District of Columbia Circuit shall be regarded as the rule of decision in habeas corpus proceedings [held pursuant to § 1226a].").

apprehended in connection with the ongoing military conflicts in Afghanistan and Iraq and designated as "enemy combatants." While this is not a perfect analog for the situation before the Court, it is sufficiently similar to provide, at least, a starting place for the Court's analysis.

The Court finds the plurality opinion in *Hamdi* instructive. Hamdi was an American citizen whom the government alleged "took up arms with the Taliban" in Afghanistan. *Hamdi*, 542 U.S. at 510. In 2001, Hamdi was "seized by members of the Northern Alliance, a coalition of military groups opposed to the Taliban government, and eventually was turned over to the United States military." *Id.* Hamdi was detained and interrogated in Afghanistan before being transferred to the United States Naval Base in Guantanamo Bay, Cuba. *Id.* However, upon discovering that he was an American citizen, the government transferred Hamdi to a naval brig in Norfolk, Virginia, and then to a naval brig in Charleston, South Carolina. *Id.*

The government contended that Hamdi was an enemy combatant and that it accordingly had the authority to "hold[] him in the United States indefinitely—without formal charges or proceedings—unless and until it makes the determination that access to counsel or further process is warranted." *Id.* at 510-11. The Supreme Court rejected this argument, with the plurality opinion concluding that Hamdi was permitted to challenge his detention in a habeas corpus proceeding under § 2241. *Id.* at 525. The *Hamdi* plurality further applied the familiar balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and determined that Hamdi was entitled to "notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a

neutral decisionmaker." *Id.* at 533. The *Hamdi* plurality expressly rejected the government's argument that "separation of powers principles mandate a heavily circumscribed role for the courts in such circumstances," as well as the government's contention that the appropriate standard of review was whether there was "some evidence" for the government's classification. *Id.* at 535-38. The *Hamdi* plurality further concluded that it was appropriate to place the initial burden on the government to produce "credible evidence that the habeas petitioner meets the enemy-combatant criteria," with the burden thereafter shifting to the petitioner. *Id.* at 534. "In the words of *Mathews*, process of this sort would sufficiently address the 'risk of an erroneous deprivation' of a detainee's liberty interest while eliminating certain procedures that have questionable additional value in light of the burden on the Government." *Id.*

The Court views *Hamdi* as setting a floor for the process to which Petitioner is entitled. In other words, in the Court's view, the circumstances of the instant case demand at least as much process as the circumstances presented in *Hamdi*. Respondent disagrees, on the basis that *Hamdi* "involve[d] the detention of U.S. citizens, not removable terrorist aliens such as Petitioner. . . ." (Dkt. 61 at 4 (emphasis omitted)). It is true that "although the Fifth Amendment protects both citizens and resident non-citizens from the deprivation of life, liberty or property without due process of law, the scope of protection afforded by the Fifth Amendment is not the same for citizens and for resident non-citizens." *Krishnan ex rel. Deviprasad v. Massanari*, 158 F. Supp. 2d 67, 73 (D.D.C. 2001), *aff'd sub nom. Krishnan v. Barnhart*, 328 F.3d 685 (D.C. Cir. 2003). However, the Court does not find that Petitioner's non-citizen status impacts the *Mathews* calculus sufficiently to warrant a

lesser level of process than that afforded to Hamdi. In particular, Petitioner's non-citizen status does not change the significance of his liberty interest, the risk of erroneous deprivation, or the burden to the government of providing additional process. Accordingly, the Court rejects Respondent's contention that Petitioner is not entitled to at least the same level of process as Hamdi.

On the other hand, Petitioner contends that he is entitled to more process than the *Hamdi* petitioner (and to detainees at Guantanamo Bay who have challenged their designation as enemy combatants, *see Boumediene v. Bush*, 553 U.S. 723 (2008) (finding that aliens detained as enemy combatants at Guantanamo Bay have the right to bring habeas corpus proceedings)). (*See* Dkt. 60 at 17-19). The Court agrees with Petitioner that there are circumstances present here that justify imposing a more stringent standard of proof than applied in *Hamdi* and the Guantanamo Bay detainee cases (collectively referred to hereinafter as the "enemy combatant cases"). In particular, the Court finds that the *Mathews* analysis supports imposition of the clear and convincing evidence standard.

Certain considerations present in the enemy combatant cases are not present here. Petitioner was not captured on the battlefield or in a warzone, and so his interest is more robust and Respondent's is less pressing than in the enemy combatant cases. *See Al-Bihani v. Obama*, 590 F.3d 866, 878 (D.C. Cir. 2010) (finding it constitutional under *Hamdi* to require government to prove enemy combatant status by preponderance of the evidence because the government was "defending a wartime detention—where national security interests are at their zenith and the rights of the alien petitioner at their nadir").

Moreover, the evidence in this case was not gathered by the military on a foreign battlefield, and so the burden on Respondent to maintain and present it is lessened. *See id.* at 877 (acknowledging that hardship to the government is "especially clear when a petitioner was seized on a foreign battlefield where the prospect of high evidentiary standards might interfere with military operations" (citing *al-Marri v. Pucciarelli*, 534 F.3d 213, 269 (4th Cir. 2008) (Traxler, J., concurring in the judgment)). Further, the factual determination at issue in this case—that is, whether Petitioner's release would "threaten the national security of the United States or the safety of the community or any person," 8 U.S.C. § 1226a(a)(6)—is a far broader inquiry than that posed in the enemy combatant cases, where the issue is whether the petitioner is a member of an opposing military force. Accordingly, the risk of erroneous deprivation would be higher if detention could be justified by a mere preponderance of the evidence.

Under these circumstances, the Court does not find the preponderance of the evidence standard sufficient to satisfy the requirements of due process. Instead, for reasons similar to those set forth in the Court's assessment of 8 C.F.R. § 241.14(d) (*see* Dkt. 55 at 23-24), the Court concludes that application of the clear and convincing standard is required. The Court finds persuasive the analysis in *Addington v. Texas*, 441 U.S. 418 (1979), wherein the Supreme Court concluded that the appropriate standard of proof in civil commitment proceedings was clear and convincing evidence, which it described as "a middle level of burden of proof that strikes a fair balance between the rights of the individual and the legitimate concerns of the state," *id.* at 431. Civil commitment is an apt

analog to the instant case, because in both scenarios there is a question of ongoing dangerousness and the potential for indefinite detention.

Respondent contends that *Jones v. United States*, 463 U.S. 354 (1983), is a more apposite case than *Addington*. (*See* Dkt. 63 at 2-4). In *Jones*, the Supreme Court considered "whether petitioner, who was committed to a mental hospital upon being acquitted of a criminal offense by reason of insanity, must be released because he has been hospitalized for a period longer than he might have served in prison had he been convicted." *Id.* at 356. In holding in the negative, the *Jones* court approved of the use of a preponderance of the evidence standard, in part because the commitment at issue applied only where "the acquittee himself advances insanity as a defense and proves that his criminal act was a product of his mental illness," resulting in "good reason for diminished concern as to the risk of error." *Id.* at 367 (emphasis and footnotes omitted). The Court disagrees that the reasoning in *Jones* applies here. Unlike the commitment at issue in *Jones*, the potentially indefinite detention permitted by § 1226a is not triggered by affirmative action on the part of the detainee, and so there is no diminishment of the risk of erroneous deprivation. The Court finds the circumstances here far more analogous to those in *Addington*.

The Court further notes that civil commitment is not the only scenario in which the government must satisfy the clear and convincing evidence standard before depriving an individual of liberty based on dangerousness. In the criminal context, "[t]he government is required to demonstrate the appropriateness of pretrial detention [based on dangerousness] by clear and convincing evidence." *United States v. Sheffield*, 799 F. Supp.

2d 18, 20 (D.D.C. 2011) (citing 18 U.S.C. § 3142(f)); *see also United States v. Alatishe*, 768 F.2d 364, 370 (D.C. Cir. 1985) ("In light of the importance of the interests of the defendant that are implicated in a pretrial detention hearing, the 'danger to the community' determination must be supported by clear and convincing evidence."). Here, as in the pretrial detention context, the purported rationale for the detention is not punitive but preventative, and so it is appropriate to impose a high standard of proof on Respondent to justify continuing to hold Petitioner.

However, the Court rejects Petitioner's contention that it is appropriate to require proof beyond a reasonable doubt, again guided by *Addington*. In *Addington*, the Supreme Court found the beyond a reasonable doubt standard inappropriate because of the "subtleties and nuances of psychiatric diagnosis," explaining that the reasonable doubt standard is suited to assessments of "specific, knowable facts." 441 U.S. at 430. Petitioner himself acknowledges that § 1226a(a)(6) requires "subjective evaluations of detainees' alleged dangerousness." (Dkt. 60 at 19). Review under § 1226a is not suited for application of the beyond a reasonable doubt standard because "there is a serious question as to whether [the government] could ever prove beyond a reasonable doubt that an individual" satisfies both the factual requirements of § 1226a(a)(3) and (a)(6). *Addington*, 441 U.S. at 429.

Finally, the Court considers Respondent's contention that "[r]egardless of the burden and the standard of proof, the Court should grant broad deference to the factual conclusions drawn by the Acting Secretary—that Petitioner's release will threaten the national security of the United States—because he is implementing a counter-terrorism

provision." (Dkt. 61 at 5). The Court is not persuaded. As the *Hamdi* plurality noted, deferential review of the type urged by Respondent is generally reserved for cases where a court is "examining an administrative record developed after an adversarial proceeding," and "[a]ny process in which the Executive's factual assertions go wholly unchallenged or are simply presumed correct without any opportunity for the [petitioner] to demonstrate otherwise falls constitutionally short." 542 U.S. at 537.

Moreover, in enacting § 1226a, Congress affirmatively chose to provide for judicial review of the merits of determinations made under § 1226a(a)(6). *See* 8 U.S.C. § 1226a(b)(1). This express legislative mandate distinguishes this matter from a run-of-the-mill immigration habeas case, in which more narrow review is generally available. In the instant case, the current proceeding is the only opportunity for Petitioner to have his detention reviewed by a neutral decisionmaker. It would not satisfy the requirements of due process for that neutral decisionmaker to have her hands tied. While the Court is cognizant of the national security concerns at play in this case, and has taken those concerns into account in its consideration of the appropriate procedures, similar concerns did not change the conclusion that Hamdi was entitled to "a meaningful opportunity to contest the factual basis for [his] detention before a neutral decisionmaker." 542 U.S. at 509. Petitioner is entitled to the same.

III.    **Right to Confrontation and Admissibility of Hearsay Evidence**

The Court next considers whether Petitioner is entitled to confront and cross-examine the adverse witnesses against him and whether Respondent may rely on hearsay evidence. Both parties raise these issues in their submissions (*see* Dkt. 60 at 19-26; Dkt.

- 13 -

61 at 7-10), and resolution thereof is of particular importance because the only factual support for Petitioner's detention that has been identified in this matter consists largely of hearsay reports from unnamed witnesses.

The Court considers first whether, as Petitioner claims, he has an absolute constitutional right to confront and cross-examine the witnesses against him in this case. In making this argument, Petitioner references the Sixth Amendment right to confrontation and the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), though he does not seem to expressly rely upon these authorities. (*See* Dkt. 60 at 20 n.8, 24 n.10). In any event, as Petitioner acknowledges, this proceeding is "not a criminal trial" (*id.* at 24 n.10) and the "fact that a proceeding will result in loss of liberty does not Ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment," *Middendorf v. Henry*, 425 U.S. 25, 37 (1976). Accordingly, federal courts that have considered the issue have concluded that "the Sixth Amendment right to confrontation does not attach in civil commitment proceedings." *Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005); *see also Walker v. Hadi*, 611 F.3d 720, 723 (11th Cir. 2010) ("*Crawford* only applies in the context of Sixth Amendment criminal trial rights and has not been extended to other contexts."); *Roache v. McCulloch*, No. 9:16-CV-1069-JKS, 2019 WL 4327271, at *10 (N.D.N.Y. Sept. 12, 2019) ("[C]onstitutional protections afforded to criminal defendants are not necessarily provided to civil litigants, even those in involuntary civil commitment proceedings. The Supreme Court has not clearly established that the Sixth Amendment right to confront and cross-examine witnesses attaches in involuntary civil commitment proceedings."); *Sisneroz v. California*, No. 07CV0500-JAH (POR), 2009 WL

302280, at *13 (E.D. Cal. Feb. 6, 2009) ("*Crawford* neither expressly nor impliedly extended the right of confrontation to civil proceedings." (quotation omitted)). Neither the Sixth Amendment nor *Crawford* requires that Petitioner be afforded the right to confront and cross-examine adverse witnesses in this civil detainment proceeding.

The Court turns to Petitioner's primary constitutional argument that he has a Fifth Amendment due process right to "confront and cross-examine his accusers." (Dkt. 60 at 23). The Supreme Court has held that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). However, these due process rights "are not coextensive with those applicable in criminal trials." *Ash v. Reilly*, 431 F.3d 826, 829 (D.C. Cir. 2005); *see also United States v. Domenech*, No. 1:14-cr-00183 (JDB/GMH), 2017 WL 8894650, at *5 (D.D.C. Mar. 13, 2017) (describing due process right to cross-examination as "more attenuated" than the Sixth Amendment right), *report and recommendation adopted*, 2017 WL 1653151 (D.D.C. May 2, 2017). For example, in the context of parole revocation hearings (where, as in this case, an individual's liberty is at stake), if the hearing officer concludes "that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." *Morrissey*, 408 U.S. at 487. Similarly, in immigration proceedings, due process may be satisfied where the government "make[s] a reasonable effort . . . to afford the alien a reasonable opportunity to confront the witnesses against him or her. . . ." *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005) (quotation omitted). To the extent Petitioner contends that his due process right to confront and cross-

examine witnesses may not be subject to exceptions based on countervailing considerations, that argument is not borne out by the case law.[3]

In *Hamdi*, the plurality specifically held that due process could countenance the admission of hearsay evidence in a habeas proceeding if it was "the most reliable available evidence from the Government. . . ." 542 U.S. at 533-34. The Court sees no reason why this would not also be the case here. As in *Hamdi*, this case implicates significant national security concerns, including the manner in which the government investigates and prevents terrorism. "In considering both the procedural and substantive standards used to impose detention to prevent acts of terrorism, proper deference must be accorded to the political branches." *Boumediene*, 553 U.S. at 796. It would not be appropriate for this Court to impose a categorical rule that hearsay cannot be admitted and that Petitioner must be allowed to confront and cross-examine all witnesses without any regard for the burden to the government and the potential danger to ongoing anti-terrorism activities.

The Court further rejects Petitioner's argument that the Federal Rules of Evidence forbid hearsay evidence unless it falls within a recognized exception. (*See* Dkt. 60 at 20-22). "[T[he Federal Rules of Evidence apply in habeas corpus proceedings 'to the extent that matters of evidence are not provided for in the statutes which govern procedure

---

[3]     Petitioner also contends that "in its analysis of 8 C.F.R. § 241.14(d), the Court pointed out that the absence of any cross-examination was one reason why the regulation created serious constitutional doubts. . . ." (Dkt. 60 at 25 (quotation omitted)). This is a misreading of the Court's prior decision.  The Court expressly declined to reach Petitioner's arguments regarding his ability to "meaningfully examine the Government's evidences and witnesses" under the challenged regulation, because it agreed with Petitioner on other grounds. (Dkt. 55 at 24 n.9).

therein or in other rules prescribed by the Supreme Court pursuant to statutory authority.'" *Bostan v. Obama*, 662 F. Supp. 2d 1, 3 (D.D.C. 2009) (quoting Fed. R. Evid. 1101(e)). The federal habeas statute modifies the Federal Rules of Evidence by expressly providing that in a habeas case, "evidence may be taken . . ., in the discretion of the judge, by affidavit." *Id.* (quoting 28 U.S.C. § 2246); *see also* 28 U.S.C. § 2243 (providing that on an application for a writ of habeas corpus, "[t]he court shall summarily hear and determine the facts"). This is fully consistent with the *Hamdi* plurality's express approval of the use of hearsay in appropriate habeas cases.

Based on the foregoing, the Court concludes that it has the discretion to permit Respondent (or Petitioner) to rely on hearsay in this case. In determining whether proffered hearsay is admissible, the Court will follow the procedures set forth in the *Bostan* case, where the court balanced "the government's legitimate national security interests and the petitioner's compelling interest in securing his freedom," and concluded that hearsay was admissible if the government could establish that "(a) the proffered hearsay is reliable and (b) that the provision of non-hearsay evidence would unduly burden the government . . . or interfere with the government's ability to protect national security." 662 F. Supp. 2d at 4, 8. The Court agrees with the *Bostan* court that application of these two factors appropriately recognizes the critical interests on both sides.

The Court further concludes that Respondent is not categorically required to identify all of its witnesses' identities. "[T]he Government has a legitimate interest in protecting sources and methods of intelligence gathering," and the Supreme Court has directed district courts to "use [their] discretion to accommodate this interest to the greatest extent

possible." *Boumediene*, 553 U.S. at 796; *cf. Larson v. Dep't of State*, 565 F.3d 857, 863 (D.C. Cir. 2009) (acknowledging the "paramount importance of protecting intelligence sources"). Indeed, even in the criminal context, the government has a qualified "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994) (quotation omitted). This privilege not only applies in civil cases but is "arguably greater . . . since not all constitutional guarantees which inure to criminal defendants are similarly available to civil defendants." *Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) (citations omitted); *see also In re United States*, 565 F.2d 19, 22 (2d Cir. 1977) ("The doctrine of informer privilege is applied in civil cases as well as criminal. . . . Indeed, there is ample authority for the proposition that the strength of the privilege is greater in civil litigation than in criminal."). The informer privilege is, of course, not absolute and must give way "[w]here the disclosure of an informer's identity . . . is essential to a fair determination of a cause." *Rovario v. United States*, 353 U.S. 53, 60-61 (1957). "In general, [parties] seeking disclosure of an informant's identity bear a 'heavy burden' in establishing that disclosure is warranted." *United States v. Mangum*, 100 F.3d 164, 172 (D.C. Cir. 1996). The Court sees no reason why these general principles regarding the identity of confidential informants should not apply here.

To be clear, and as the Court emphasized in announcing its rulings at the conference on January 17, 2020, in the event the Court does admit hearsay evidence, that does not equate to a finding that such evidence is sufficient to satisfy Respondent's burden of proof.

Indeed, the Court is highly skeptical that anonymous hearsay from what are essentially "jailhouse snitches" could meet the clear and convincing evidence standard imposed on Respondent. However, it is ultimately within Respondent's purview to determine what evidence he wishes to present, and the Court will not categorically bar the use of hearsay evidence.

## IV. Location of Evidentiary Hearing

Finally, the Court considers where the evidentiary hearing should be held. Respondent argues that the evidentiary hearing should be held in the courtroom at the BFDF for the practical reason that moving Petitioner from the BFDF to the federal courthouse presents substantial logistical challenges. (Dkt. 61 at 11). Petitioner asks the Court to hold the hearing at the federal courthouse in either Rochester or Buffalo, for two reasons: (1) the BFDF is not open to the public in a meaningful sense, because "anyone wishing to access the immigration courtroom at [the BFDF] must traverse a gauntlet of ICE-controlled security measures unlike those at any federal courthouse" (Dkt. 60 at 26-27); and (2) holding the hearing at the BFDF would create an "atmosphere of coercion" for witnesses (*id.* at 28).

The Court does not doubt Respondent's contention that transporting Petitioner will be challenging. The Court has reviewed the sealed declaration of Thomas P. Brophy, Deputy Field Office Director for ICE, and appreciates the logistical and security concerns described therein.

On the other hand, Respondent has not submitted any declaration from the United States Marshals Service suggesting that security could not be accommodated for a

proceeding in one of the District's courthouses—and indeed, any such suggestion is contradicted by the myriad of proceedings conducted in those courthouses involving criminal defendants held in custody.

The Court does not agree with Petitioner that the atmosphere at the BFDF courtroom would be so oppressive as to impair the fairness of the hearing. However, the Court is persuaded that the security procedures at the BFDF are more stringent and less accessible to the public than those at the federal courthouse, and that this fact warrants holding the hearing at the federal courthouse.

This Court has the authority to convene a "[s]pecial session[] . . . at such places in the district as the nature of the business may require, and upon such notice as the court orders," and "[a]ny business may be transacted at a special session which might be transacted at a regular session." 28 U.S.C. § 141(a)(1) and (2); *see also Lasky v. Quinlan*, 406 F. Supp. 265, 267 (S.D.N.Y. 1976) ("[W]here the interests of justice will be served a hearing is properly held away from the place where the court normally sits."). For example, in appropriate cases, courts in this Circuit have held special sessions at state facilities or in private homes. *See United States v. Tomaiolo*, 249 F.2d 683, 693-94 (2d Cir. 1957) (affirming decision to hold a special session at a witness' home when the witness was unable to travel to the courthouse); *Negron v. Preiser*, 382 F. Supp. 535, 539 (S.D.N.Y. 1974) (evidentiary hearing conducted on the grounds of state prison hospital).

However, the Court finds that the interests of justice would not be served by holding the evidentiary hearing in this case at the BFDF. "One of the strongest pillars of our system of justice in the United States is the presumption that *all* judicial proceedings are open to

- 20 -

the public whom the judiciary serves." *Dhiab v. Obama*, 70 F. Supp. 3d 465, 467 (D.D.C. 2014). "Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 509 (1984).

To enter the federal courthouse in either Rochester or Buffalo, a member of the public need only show identification and submit to a security screening (conducted by court security officers). However, Petitioner maintains (and Respondent has not disputed) that to enter the BFDF, a member of the public must not only submit to security screening but also surrender his or her identification card and register as a visitor, which includes disclosing one's name, reason for visiting, and citizenship status. (Dkt. 60 at 26-27). These measures are significantly more onerous than those in place at the federal courthouse and are controlled by the same governmental agency that is detaining Petitioner, instead of by the Court. Under the circumstances of this case, the Court does not view such procedures as resulting in a proceeding that is sufficiently accessible by the public, and accordingly does not find it appropriate to convene a special session at the BFDF. *Cf. Tomaiolo*, 249 F.2d at 693-94 (upholding hearing in basement of private home in part because "there [was] no showing that the public was excluded"). Instead, the evidentiary hearing will be held at the Buffalo federal courthouse.

## CONCLUSION

For the reasons set forth above, the Court orders as follows: (1) at the evidentiary hearing, Respondent will bear the burden of demonstrating by clear and convincing evidence that the factual predicate for continued detention under 8 U.S.C. § 1226a(a)(6) is

- 21 -

met in this case; (2) Petitioner bears the burden of demonstrating that the identity of the confidential informants in this case should be revealed; (3) hearsay evidence will be admissible at the evidentiary hearing if the party proffering such evidence demonstrates that such evidence is reliable and that it would be unduly burdensome to submit non-hearsay evidence; and (4) the evidentiary hearing will be held at the federal courthouse in Buffalo, New York.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     January 24, 2020
            Rochester, New York