UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ADHAM AMIN HASSOUN,

           Petitioner,

    v.

JEFFREY SEARLS, in his official
capacity as Acting Assistant Field Office
Director and Administrator of the Buffalo
Federal Detention Facility,

           Respondent.
_____

**DECISION AND ORDER**

1:19-CV-00370 EAW

Petitioner Adham Amin Hassoun ("Petitioner") is a civil immigration detainee currently housed at the Buffalo Federal Detention Facility (the "BFDF") in Batavia, New York, who seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1226a(b), arguing that his current detention is unauthorized by lawful statute or regulation and that he must be released, with appropriate conditions of supervision. An evidentiary hearing is presently scheduled to commence on April 28, 2020, where Respondent Jeffrey Searls, the Acting Assistant Field Office Director and Administrator of the BFDF ("Respondent"), will bear the burden of demonstrating by clear and convincing evidence that the factual predicate for continued detention under 8 U.S.C. § 1226a(a)(6) is met in this case—that is, Respondent must clearly and convincingly establish that Petitioner's release would threaten the national security of the United States or the safety of the community or any person. (Dkt. 71; Dkt. 75).

"To expedite the flow of discovery material between the parties" in advance of the evidentiary hearing and adequately protect confidential information, the Court signed a mutually agreeable Protective Order on February 5, 2020 (the "Protective Order"). (Dkt. 77). Among other things, the Protective Order restricted the dissemination of confidential information to certain enumerated persons. (*Id.* at ¶ F). The Protective Order contained certain safeguards in the event of an unauthorized disclosure of confidential information, as follows:

> If a Receiving Party learns that, by inadvertence or otherwise, it, or a person to whom it has disclosed Confidential Information in accordance with this Protective Order, has disclosed Confidential Information to any person or in any circumstance not authorized under this Protective Order, the Receiving Party shall, upon learning of the unauthorized disclosure: (a) promptly notify the person(s) to whom the unauthorized disclosure was made that the unauthorized disclosure contains Confidential Information subject to this Protective Order; (b) promptly make all reasonable efforts to obtain the return of the Confidential Information and to prevent further unauthorized disclosures of the Confidential Information, including requesting the person who received the unauthorized disclosure to agree to be bound by the terms of this Protective Order by executing a declaration in the form attached as "Exhibit A"; and (c) within ten calendar days notify the Producing Party and all other Parties of the identity of the person(s) to whom the unauthorized disclosure was made, the circumstances surrounding the disclosure, and the steps taken to prevent any use or further disclosure of the Confidential Information that was the subject of the unauthorized disclosure.

(*Id.* at ¶ H(2)). In addition to the Protective Order, the Court signed a mutually agreeable Order Pursuant to Federal Rule of Evidence 502(d) on February 6, 2020, protecting against the waiver of any privilege or protection by the production of documents or information (the "Rule 502(d) Order"). (Dkt. 78). The Rule 502(d) Order sets forth certain steps that must be taken in the event that a party produces a document it later determines is subject

to a claim of privilege, including requiring that the party who receives the document protect against any dissemination of the privileged material. (*Id*. at ¶¶ B(2)-(6)).

On March 16, 2020, Respondent filed a motion to enforce the Protective Order and Rule 502(d) Order. (Dkt. 104). The facts outlined in Respondent's motion are largely undisputed. On February 6, 2020, Respondent produced several thousand pages of documents to Petitioner in response to his discovery demands. (Dkt. 119 at 2-3). Five days later, on February 11, 2020, Petitioner's counsel informed Respondent's counsel of a potential inadvertent disclosure of the identity of a confidential informant (the "CI") on one page of that production. (*Id*. at 3). That same day, Respondent's counsel confirmed the inadvertent disclosure and communicated, pursuant to the Rule 502(d) Order, that Respondent claimed a privilege with respect to the inadvertently disclosed information. (*Id*.). The following day (February 12, 2020), Petitioner's counsel acknowledged that the provisions of the Rule 502(d) Order had been invoked, and confirmed that the inadvertently produced unredacted page would be destroyed upon receipt of a redacted page. (*Id*.).

However, two days later, on February 14, 2020, Petitioner addressed approximately 30 detainees gathered for religious services at the BFDF, identifying the CI as a "rat, a liar, and a coward." (*Id*. at 3-4). Petitioner identified the source of his information as paperwork provided to him by his lawyers. (*Id*. at 4). Respondent describes Petitioner's address as "a tirade" where he was "screaming" and "visibly angry." (*Id*.).

While reserving the right to seek additional remedies, Respondent asks for compliance with the Protective Order in his pending motion—namely, that Petitioner identify all persons to whom he disclosed the confidential information, whether he has

disclosed any other confidential information produced in this case to any unauthorized person(s), the circumstances surrounding such disclosures, and the steps taken to prevent any use or further disclosure of confidential information that was the subject of an unauthorized disclosure. (*Id*. at 5).

As noted, the facts surrounding the disclosure of the CI's identity are largely undisputed.[1] In response to the motion, Petitioner admits that he violated the Protective Order. Specifically, Petitioner contends that he had learned the name of the CI "from my attorneys after the government disclosed his name in documents it produced," but "a few days after" he was told the information was shared by mistake. (Dkt. 118 at ¶¶ 3-4). Nonetheless, Petitioner admits that on February 14, 2020, while attending religious services at the BFDF, he stood up and disclosed the name of the CI to warn people that they should not trust him. (*Id*. at ¶ 5). Petitioner contends that while his attorneys gave him a copy of the Protective Order and explained it to him, he "did not fully grasp that discussing information I learned without disclosing the specific contents of documents would be a violation of the protective order." (*Id*. at ¶ 8). Petitioner states he now comprehends the restrictions contained in the Protective Order and "will not violate it

---

[1] One significant fact is disputed. Respondent submitted a sworn statement from the CI referencing an alleged incident on February 27, 2020, where Petitioner threatened him by making a slashing motion across his throat and stating: "I will kill you. I will kill you." (Dkt. 117-4 at 4). Petitioner denies the veracity of the CI's claims, and contends that he has not seen the CI in months. (Dkt. 118 at ¶¶ 13-15). On this record, the Court cannot resolve the accuracy of the CI's accusations. While not dispositive of the pending motion, the Court does view this incident as relevant to the underlying issues to be resolved at the evidentiary hearing—namely, whether Petitioner's release would threaten the national security of the United States or the safety of the community or any person.

again." (*Id.* at ¶ 9). Other than the disclosure of the CI's identity during the religious services, Petitioner denies disclosing any confidential information to any other detainee, although he does admit disclosing information to "a few ICE officers and contract detention officers," but represents that he "will not have these kinds of conversations again now that I understand that it is not allowed." (*Id.* at ¶ 11).

Petitioner's counsel has submitted a declaration indicating that after learning of Petitioner's unauthorized disclosure, they again counseled their client on the restrictions set forth in the Protective Order, but any further steps to mitigate the unauthorized disclosure are not practicable, especially since Respondent has now withdrawn its assertion of the confidential informant privilege with respect to the CI's identity. (Dkt. 110-1 at ¶¶ 2-4).

Based upon the foregoing, it is uncontested that Petitioner violated the terms of the Protective Order. Whether Petitioner did not understand the terms of the Protective Order when he disclosed the CI's identity at the religious services on February 14, 2020—or rather whether he intentionally disregarded this Court's Order—need not be resolved at this time.[2]

---

[2] Whether Petitioner intentionally and knowingly violated the Protective Order is ultimately relevant to the issues to be presented at the evidentiary hearing, because Petitioner's willingness to follow a Court Order is directly relevant to the issues of his alleged dangerousness and whether he should be released from custody with appropriate conditions.

Faced with the undisputed evidence that Petitioner violated the Protective Order, the next issue becomes what is the remedy? In his motion, Respondent seeks the following relief:

> Petitioner be required to notify Respondent of the identity of all persons to whom Petitioner disclosed confidential information regarding [the CI], whether Petitioner has disclosed any other confidential information produced in this case to any person not authorized, the circumstances regarding such disclosures, and the steps taken to prevent any use or further disclosure of the confidential information that was the subject of the unauthorized disclosure.

(Dkt. 119 at 5). In his response to the motion, Petitioner has either provided the requested information or explained why, under the circumstances, further compliance with the remedies set forth in the Protective Order is not realistic.

The Court agrees that Petitioner has complied with the remedies set forth in the Protective Order to the extent possible, and any further compliance is not practicable under the circumstances. For instance, the Court agrees with Petitioner's counsel that "[i]t is not practicable to ask every person present [during the religious services] to sign the protective order or to ask them to keep the information confidential," and "[f]urther steps to mitigate the unauthorized disclosure are not likely to be effective because the information in question is no longer confidential." (Dkt. 110-1 at ¶¶ 3-4). This conclusion certainly does not reflect the Court's disregard of the seriousness of Petitioner's violation of the Protective Order, but there is no further relief that the Court is in a position to grant that is within the scope of the pending motion.

Accordingly, Respondent's motion to enforce the terms of the Protective Order and Rule 502(d) Order (Dkt. 104) is denied as moot because to the extent the requested relief

can be granted, it has been provided through Petitioner's response to the motion. This denial is without prejudice to any further relief that Respondent may seek for violation of the terms of the Protective Order and/or Rule 502(d) Order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 7, 2020
         Rochester, New York