UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ADHAM AMIN HASSOUN,

             Petitioner,

      v.

JEFFREY SEARLS, in his official
capacity as Acting Assistant Field Office
Director and Administrator of the Buffalo
Federal Detention Facility,

             Respondent.

**DECISION AND ORDER**

1:19-CV-00370 EAW

---

## INTRODUCTION

The instant habeas corpus petition has a long and complicated procedural history, involving multiple decisions by this Court and proceedings before both the Court of Appeals for the Second Circuit and the Court of Appeals for the District of Columbia Circuit. At this time, two substantive issues remain before the Court: (1) resolution of petitioner Adham Amin Hassoun's ("Petitioner") pending motion for sanctions (Dkt. 164); and (2) resolution of respondent Jeffrey Searls' ("Respondent") request that the Court vacate as moot its rulings and judgment as to the legality of Petitioner's detention under 8 U.S.C. § 1226a.[1] For the reasons discussed below, the Court grants in part and denies in part Petitioner's motion for sanctions and grants Respondent's request for vacatur.

---

[1] There are also a pending motion to file *ex parte* and *in camera* (Dkt. 283), a pending motion to seal (Dkt. 300), and a pending motion by attorney Joseph F. Carilli, Jr. to withdraw as counsel for Respondent (Dkt. 282). Mr. Carilli's motion to withdraw is hereby

## BACKGROUND

The background of this action is set forth in detail in the Court's numerous prior Decisions (*see* Dkt. 55; Dkt. 75; Dkt. 138; Dkt. 150; Dkt. 225; Dkt. 256), familiarity with which is assumed for purposes of the instant Decision and Order.  The Court has briefly summarized the key factual and procedural history below; additional details necessary to understanding the substantive issues before the Court are set forth in the relevant sections of its analysis.

At the time he commenced this action, Petitioner was a civil immigration detainee at the Buffalo Federal Detention Facility (the "BFDF").  Pursuant to 28 U.S.C. § 2241 and 8 U.S.C. § 1226a(b), Petitioner challenged the legality of his potentially indefinite detention, which Respondent contended was lawful under both 8 U.S.C. § 1226a(a) and 8 C.F.R. § 241.14(d).  On December 13, 2019, the Court entered a Decision and Order (Dkt. 55) finding that Petitioner's continued detention was not lawfully authorized by 8 C.F.R. § 241.14(d) and that an evidentiary hearing was necessary before the Court could determine the lawfulness of Petitioner's continued detention pursuant to § 1226a.  The Court permitted the parties to engage in discovery in anticipation of the evidentiary hearing. (Dkt. 57; Dkt. 58; Dkt. 70).

On May 15, 2020, Petitioner filed a motion to compel and for sanctions.  (Dkt. 164). The Court entered a Decision and Order on June 18, 2020, granting Petitioner's motion to compel and reserving decision on the request for sanctions.  (Dkt. 225).  In that same

granted.  The Court resolves the pending motions to file *ex parte* and *in camera* and to seal below.

Decision and Order, the Court ruled on various evidentiary issues the parties had raised in advance of the evidentiary hearing.  (*Id*.).

Later in the day on June 18, 2020, Respondent filed a motion to cancel the evidentiary hearing and proceed to final judgment.  (Dkt. 226).  Without objection from Petitioner, the Court granted Respondent's motion on June 22, 2020.  (Dkt. 236).  On June 29, 2020, the Court issued a Decision and Order granting the Petition and ordering Petitioner's release effective July 2, 2020, at 12:00 p.m., subject to conditions of supervision.  (Dkt. 256).  The Court further denied Respondent's motion to stay Petitioner's release pending appeal.  (*Id*.).

Following entry of the Court's Decision and Order on June 29, 2020, Respondent filed two notices of appeal—one appealing the Court's rulings as to Petitioner's detention under 8 U.S.C. § 1226a(a) to the D.C. Circuit and one appealing the Court's rulings as to Petitioner's detention under 8 C.F.R. § 241.14(d) to the Second Circuit.  (Dkt. 259; Dkt. 260).  Upon the consent of Petitioner and Respondent, both the D.C. Circuit and the Second Circuit issued immediate administrative stays to allow for consideration of a motion for a stay pending appeal by Respondent.  (Dkt. 267; Dkt. 268).

On July 13, 2020, Respondent filed before the Second Circuit a consent motion to extend the administrative stay through July 27, 2020.  Motion to Extend Time*, Hassoun v. Searls*, No. 20-2056, Dkt. 43 (2d Cir. Jul. 13, 2020).  In his consent motion, Respondent advised the Second Circuit that "[a]bsent an extraordinary or unforeseen circumstance, the government intends to remove Petitioner-Appellee from the United States by July 27, 2020."  *Id*.

Despite having been informed that Petitioner's removal from the United States was imminent and having before it a consent request by Respondent to extend the administrative stay, the Second Circuit entered an Order on July 16, 2020, granting Respondent's motion for a stay pending appeal, and indicating that an opinion would be forthcoming. *Hassoun v. Searls*, No. 20-2056, Dkt. 60 (2d Cir. Jul. 16, 2020). The D.C. Circuit, on the other hand, took the more standard approach of granting the consent motion for an extension of the administrative stay after being advised that Petitioner's removal was forthcoming. *Hassoun v. Searls*, No. 20-5191, Document No. 1851462 (D.C. Cir. Jul. 13, 2020).

Petitioner was removed from the United States on July 21, 2020, thereby mooting his challenges to his ongoing detention. (Dkt. 275). Notwithstanding the fact that the issues before it had been mooted, the Second Circuit issued a published Opinion on July 30, 2020, setting forth the rationale for its Order granting Respondent's motion for a stay. *Hassoun v. Searls*, 968 F.3d 190 (2d Cir. 2020).

Following Petitioner's removal, Respondent moved in both the Second and D.C. Circuit's for dismissal of the appeals as moot, as well as for vacatur of this Court's holdings and judgment as moot. Motion to Dismiss and to Vacate Judgment, *Hassoun v. Searls*, No. 20-2056, Dkt. 82 (2d Cir. Aug. 5, 2020); Motion to Dismiss Case as Moot and to Vacate, *Hassoun v. Searls*, No. 20-5191, Document No. 1855258 (D.C. Cir. Aug. 5, 2020). The Second Circuit granted Respondent's motion in a second published Opinion issued on September 22, 2020. *Hassoun v. Searls*, 976 F.3d 121 (2d Cir. 2020). In accordance with the Second Circuit's instructions, this Court entered a Text Order on December 16, 2020,

dismissing the Petition as moot to the extent that it challenged the legality of Petitioner's detention pursuant to 8 C.F.R. § 241.14(d).  (Dkt. 296).  The Court further ordered the Clerk of Court to issue an Amended Judgment reflecting the same (*id.*), which the Clerk of Court did on December 17, 2020 (Dkt. 298).

The D.C. Circuit again took a different approach from the Second Circuit.  On October 13, 2020, the D.C. Circuit issued an unpublished Order dismissing the appeal as moot and, on its own motion, remanding the matter to this Court with instructions to consider Respondent's request for vacatur as a motion for relief from an order pursuant to Federal Rule of Civil Procedure 60(b).  *Hassoun v. Searls*, No. 20-5191, Document No. 1865943 (D.C. Cir. Oct. 13, 2020).

With leave of the Court (Dkt. 297), Respondent filed a supplemental brief in support of his request for vacatur on January 4, 2021 (Dkt. 299).  Petitioner filed a supplemental opposition brief on January 20, 2021.  (Dkt. 301)[2].

---

[2]     Petitioner also filed a motion for leave to file under seal portions of his supplemental opposition brief discussing non-public information related to the negotiation of the conditions of his removal.  (Dkt. 300).  The Court finds that sealing is necessary in order to serve the interests of permitting non-public negotiations between the United States and foreign countries in order to allow for the resettlement of detainees abroad and that these interests override the presumption of public access.  Accordingly, Petitioner's motion to seal is granted.   The Court has filed a sealed, unredacted version of Petitioner's supplemental opposition brief contemporaneously with this Decision and Order.

**DISCUSSION**

I.    **Petitioner's Motion for Sanctions[3]**

    A.    **Additional Background**

As set forth above, on May 15, 2020, Petitioner filed a motion to compel and for sanctions.  (Dkt. 164).  As the Court explained in its Decision and Order dated June 18, 2020, Petitioner's motion to compel arose from "Respondent's failure to produce in discovery information calling into question [government witness Shane Ramsundar's ["Ramsundar"]] credibility."  (Dkt. 225 at 22).  In particular, Respondent had failed to turn over documents from Ramsundar's immigration alien file ("A-file") that were responsive to Petitioner's request for "[a]ll documents and other evidence that would tend to undermine the credibility of all witnesses/informants against Petitioner."  (*Id.* (citation omitted)).  Petitioner identified six categories of documents that he was asking the Court to order Respondent to turn over.  (*Id*. at 22-23).  At oral argument on the motion to compel, Respondent's counsel "represented on the record that they have produced all documents responsive to the six categories of documents" at issue.  (*Id.* at 23).  The Court found that "any documents falling within the categories [Petitioner had] enumerated in his motion to compel are responsive and should be produced" and accordingly granted Petitioner's motion to compel.  (*Id.* at 24).

---

[3]    The parties and the Court are in agreement that the Court's jurisdiction over Petitioner's motion for sanctions did not dissipate due to Respondent's appeals.  In any event, Respondent's appeals are no longer pending.

Petitioner also sought sanctions against Respondent, on multiple bases. First Petitioner sought sanctions based on Respondent's failure to produce evidence reflecting negatively on Ramsundar's credibility. (Dkt. 190 at 4-7). Second, Petitioner sought sanctions on the basis that the government had deleted video evidence undercutting a specific claim by Ramsundar that Petitioner had threatened him in the visitation area at the BFDF. (*Id*. at 7-8). In its Decision and Order of June 18, 2020, the Court reserved decision on Petitioner's request for sanctions, but noted that it had "serious concerns" about the government's conduct in this matter, and that "Respondent's counsel's handling of Ramsundar's claim that Petitioner threatened his life" was "at the very least sloppy, and possibly intentionally misleading." (Dkt. 225 at 24-25).

On June 29, 2020, after entering its Decision and Order granting the Petition (Dkt. 256), the Court ordered the parties to submit supplemental briefing regarding "(1) the Court's continuing jurisdiction over Petitioner's pending motion for sanctions (Dkt. 164) in light of the Court's disposition of the Petition and the anticipated appeal thereof and (2) any additional steps that are necessary in order for the Court to finally determine the issues set forth in the motion for sanctions" (Dkt. 258). The parties filed supplemental briefs on July 20, 2020 (Dkt 273; Dkt. 274), and supplemental responses on July 27, 2020 (Dkt. 278; Dkt. 280).

On August 11, 2020, the Court entered an Order requiring Respondent to file a further supplemental submission providing "a specific, detailed explanation concerning the circumstances of" two supplemental document productions made on June 22, 2020, and July 17, 2020, "including but not limited to why the documents had not previously been

discovered and produced, when and how it was discovered that additional responsive documents existed that had not been produced, and why it was represented to the Court on June 12, 2020, that all responsive documents to the identified categories [in Petitioner's motion to compel] had been produced when, in fact, that was not true."  (Dkt. 181). Respondent thereafter filed a motion to file the required supplemental submission *ex parte* and *in camera*.  (Dkt. 283).  On order of the Court (Dkt. 287), Respondent submitted an *ex parte*, *in camera* copy of his proposed filing to the Court.

      **B.**     **Respondent's Motion to File *Ex Parte* and *In Camera***

      As an initial matter, the Court grants in part Respondent's motion to file his additional supplemental submission *ex parte* and *in camera*.  The information requested by the Court necessarily required Respondent's counsel to divulge privileged information, including confidential communications between government counsel and their agency clients and attorney work product.  The Court has reviewed the supplemental briefing and accompanying declarations submitted by Respondent and these documents in fact consist largely of privileged information.  It would not be appropriate for the Court to require that this privileged information be provided to Petitioner nor made available to the public.  *See In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) ("[R]ather than require that the parties file . . . privileged documents with the court, the district court may, in the exercise of its informed discretion and on the basis of the circumstances presented, require that the party possessing the documents appear *ex parte* in chambers to submit the documents for *in camera* review by the judge[.]");  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (describing submission

of documents for *in camera* review as "a practice both long-standing and routine in cases involving claims of privilege").  Further, there is no prejudice to Petitioner in permitting the filing of these documents *ex parte* and *in camera*—briefing on the issue of sanctions is closed, and the Court ordered the supplemental briefing specifically pursuant to its own inherent authority to "*sua sponte* inquire into whether a party has made a false representation before it."  (Dkt. 281 at 2).

As to the declarations submitted by Respondent, the Court finds that these documents should remain *ex parte* and *in camera* in their entirety.  However, the Court finds that certain portions of Respondent's supplemental brief merely recount information that is already known to Petitioner and/or do not disclose any privileged information. Accordingly, the Court has filed on the docket contemporaneously with this Decision and Order a redacted version of Respondent's supplemental brief.

### C.   <u>Sanctions Requested by Petitioner</u>

In his supplemental filing on July 20, 2020, Petitioner summarized the specific sanctions he is seeking, the basis for each request for sanctions, and, as to certain  requested sanctions, the additional proceedings that he contends are necessary for a full adjudication. (Dkt. 274).  The Court addresses each of Petitioner's requests for sanctions below.

### 1.   <u>Request for Attorney's Fees Under Fed. R. Civ. P. 37(a)(5)(A) in Connection with Petitioner's Successful Motion to Compel</u>

Petitioner seeks to recover attorney's fees in connection with his successful motion to compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).  (Dkt. 274 at 7). Respondent does not contest that an award of fees is warranted "unless Respondent can

show that an exception exists under Rule 37(a)(5)(A)(i)-(iii)," and proposes additional briefing as to the existence of such an exception and the amount of fees.  (Dkt. 280 at 13). However, Petitioner contends that no further proceedings are required to determine whether such an exception is applicable.  (Dkt. 278 at 3-4).

Rule 37(a)(5)(A) mandates an award of fees in connection with a successful motion to compel, unless "after giving an opportunity to be heard" the Court determines that "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P.  37(a)(5)(A)(i)-(iii); *see also Wager v. G4S Secure Integration, LLC,* No. 1:19-CV-03547 MKV KNF, 2021 WL 293076, at *4 (S.D.N.Y. Jan. 28, 2021) ("[I]t is widely accepted that an award of expenses under Rule 37(a)(5)(A) is mandatory unless one of the three exceptions applies.").  The Court disagrees with Petitioner that Respondent has been afforded the requisite opportunity to be heard—the Court has not previously ordered briefing specifically addressing the existence of an exception under Rule 37(a)(5)(A)(i)-(iii).  Further, the Court does not currently have before it the information necessary to determine the amount of any fee award.  Accordingly, the Court sets the following schedule for additional briefing of this issue: (1) Petitioner shall file an application for fees within 21 days of entry of this Decision and Order, and such application shall include "documentation of . . . contemporaneous attorney's records detailing the legal services provided in preparing and prosecuting [the] motion to compel," *Komondy v. Gioco*, No. 3:12-CV-250 CSH, 2015 WL 1311314, at *4 (D. Conn. Mar. 23,

2015); (2) Respondent shall file any response to Petitioner's application within 14 days of receipt thereof, and such response shall include any argument regarding the applicability of an exception under Rule 37(a)(5)(A)(i)-(iii), *see Wager*, 2021 WL 293076, at *4 ("[T]he burden of persuasion is on the losing party to avoid assessment of expenses and fees rather than on the winning party to obtain such an award." (citation and original alterations omitted)); and (3) Petitioner shall file any reply to Respondent's response within seven days of receipt thereof.

> **2.**   **Request for Official Admonishments, Reprimands, or Censure Related to the Failure to Produce Ramsundar Credibility Evidence**

Petitioner next requests that the Court impose sanctions because "[t]he government failed to disclose evidence that fatally undermined . . . Ramsundar's credibility and was directly responsive to Petitioner's discovery requests." (Dkt. 274 at 8). Specifically, Petitioner urges the Court to issue "official admonishments, reprimands, or censure addressed to both Respondent's counsel and the government agents or officials responsible for the government's discovery failures." (*Id.* at 9). Petitioner further requests that the Court order additional discovery and potentially hold a hearing into the discovery process in this case, in order to determine precisely what form such sanctions should take. (*Id.* at 9-10). Petitioner acknowledges that such actions would have to be taken pursuant to the Court's inherent authority to impose sanctions when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (*Id.* at 10 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991))).

"[T]he Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). The Court does not find that this is the rare case in which an imposition of sanctions due to its inherent authority is warranted. In this regard, the Court is persuaded by the well-reasoned decision in *State v. United States Dep't of Commerce*, 461 F. Supp. 3d 80 (S.D.N.Y. 2020), which presented strikingly similar circumstances. In particular, in that case, evidence came to light that "cast doubt on certain representations made, and testimony given," by government counsel and witnesses. *Id*. at 86. The plaintiffs then filed a motion that, although framed as a motion for sanctions, was "really a motion for discovery first, and sanctions only second." *Id*. at 88. The court declined to order such additional discovery and sanctions, explaining that "[d]iscovery serves the goals of litigation, not the other way around. And a federal court is not an investigative body charged with government oversight." *Id*. at 91. The court further noted that the plaintiffs had already "prevailed on their claims and obtained all the substantive relief they sought" and "the broad scope of discovery" in that matter "was already unusual" for the type of action. *Id*. As such, the court concluded "that 'restraint and discretion' counsel against the further expense of judicial resources in pursuit of these matters. . . ." *Id*. (quoting *Chambers*, 501 U.S. at 44).

The factors that led the *State* court to conclude that additional discovery was not warranted are present here. Petitioner successfully persuaded this Court to grant the Petition despite the alleged government misconduct and has been released from immigration detention. The robust discovery permitted in this case was already an anomaly

for a habeas case.  Moreover, there has been a change in administration resulting in new leadership at the Department of Justice, which may complicate any inquiry into the processes that led to the discovery failures in this case.  Under these circumstances, the Court does not find it appropriate to order the additional discovery sought by Petitioner.

Further, the Court does not find that the record before it supports the imposition of sanctions under its inherent authority.  Indeed, Petitioner essentially concedes as much, contending that additional discovery is necessary to determine "whether formal admonishments, reprimands, or censure are warranted here—and, if they are, to determine their content, scope, and appropriate addressees."  (Dk. 274 at 10).  The Court agrees that the record before it is not sufficient to support an imposition of sanctions pursuant to its inherent authority.

To be clear, the Court continues to be troubled by the conduct of Respondent's counsel in connection with this case.  The Court expects all attorneys who appear before it to conduct themselves with the utmost candor, but that expectation is particularly keen when it comes to attorneys representing the United States of America.  As guardians of the public interest, government attorneys have a "heightened ethical obligation that extends beyond just representing the narrow interests of [their] most direct client"—they "also must endeavor to do justice." *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 600 (E.D.N.Y. 2017) (internal quotation marks omitted).  This obligation "applies equally to attorneys who represent the government in civil disputes."  *Id.*  The Court is not convinced that this standard was satisfied here—instead, it appears that Respondent's counsel adopted litigation tactics that did not serve the cause of justice, including taking an unwarrantedly

narrow and crabbed view of Respondent's discovery obligations.  However, in order to support the imposition of sanctions under its inherent authority, the Court would have to make a "factual finding[] of bad faith . . . characterized by a high degree of specificity" and conclude that counsel's actions were "entirely without color." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) (quotation omitted).  On the record before it, the Court will not make such a finding.

> **3.**   **Request for Sanctions Related to Late Disclosure of Evidence Regarding Mohammed Al Abed**

Petitioner's next request is for sanctions related to Respondent's late disclosure of evidence calling into question the credibility of Mohammed Al Abed ("Al Abed"), whom the government intended to call as a witness at the evidentiary hearing.  As Petitioner explains, after the evidentiary hearing was canceled, "Respondent's counsel disclosed three separate documents showing that Mohammed Al Abed had insisted on benefits from the government as an explicit quid pro quo in exchange for information and testimony about [Petitioner]."  (Dkt. 274 at 11).  Petitioner argues that the failure to produce these documents earlier, coupled with Respondent's representations to the Court and Petitioner that Al Abed was afraid of reprisal from Petitioner if he testified against him, "raises grave concerns" that Respondent's counsel "made an intentional, strategic decision to conceal that Mr. Al Abed had demanded benefits as a condition for testifying. . . ."  (Dkt. 274 at 12-13).  Petitioner further notes that at oral argument on his motion to compel, Respondent's counsel told the Court that it had already produced "any additional documents that show Mr. Ramsundar or any other witness who sought benefits in exchange

for testimony or has ever received such benefits at any time" (*id.* at 13), despite having not produced these documents related to Al Abed.  Based on these facts, Petitioner seeks three forms of sanctions: (1) attorney's fees pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) for failure to timely supplement discovery responses; (2) imposition of attorney discipline pursuant to Local Rule of Civil Procedure 83.3 for violating the ethical duty of fairness to opposing counsel; and (3) imposition of attorney discipline pursuant to Local Rule 83.3 for violating the duty of candor to the Court.  (*Id.* at 14-15).  As to his latter two requests, Petitioner acknowledges that further proceedings would be necessary before the Court could impose the sanctions sought.  (*Id.* at 15).

The Court declines to impose sanctions based on the late disclosure of the Al Abed documents.  As to Petitioner's request for sanctions for the failure to timely supplement discovery responses, the Court notes that Rule 37(c)(1) allows for imposition of sanctions based on the failure to timely supplement "unless the failure was substantially justified <u>or is harmless</u>."  Fed. R. Civ. P. 37(c)(1) (emphasis added).   In this context, "[h]armlessness means an absence of prejudice."  *Coene v. 3M Co.*, 303 F.R.D. 32, 44 (W.D.N.Y. 2014).  Here, there was no prejudice to Petitioner as a result of the late disclosure of the documents at issue—even without producing such evidence, Respondent conceded that he could not satisfy the evidentiary standard set by the Court, and Al Abed was never actually presented as a witness.  While Petitioner's counsel note that they were required to spend time preparing to respond to Al Abed's testimony (Dkt. 274 at 14), they would have been required to do so even if they had known that Al Abed had sought a benefit from the government in exchange for such testimony, as this information would not have supported

precluding him as a witness.  Accordingly, the Court does not find imposition of sanctions pursuant to Rule 37(c)(1) warranted.

The Court further declines to hold the additional proceedings that would be necessary in order to impose the additional sanctions suggested by Petitioner. Respondent's counsel have provided an explanation to the Court of the failure to produce the Al Abed documents prior to the Court's issuance of its Decision and Order on June 18, 2020, and the Court finds that explanation credible.  The record before the Court does not support the imposition of attorney discipline, nor does the Court find additional discovery in this regard warranted, for many of the same reasons discussed above.

### 4.   Request for Spoliation and Other Sanctions with Regard to the Failure to Preserve Ramsundar Video Evidence

Petitioner's final sanctions request relates to the failure to preserve video evidence contradicting Ramsundar's claim that Petitioner had threatened him in the visitation area at the BFDF and the failure to timely correct the record regarding this claim.  The Court's decision of June 18, 2020, discusses the factual background of this issue in detail.  (*See* Dkt. 225 at 25-26).  In sum, Ramsundar claimed that the threat had been made on February 27, 2020, and a sworn statement by Ramsundar to that effect was submitted to the Court on March 16, 2020, in connection with a request by Respondent for sanctions.  (*Id*. at 25). However, on March 24, 2020, staff at the BFDF reviewed video recordings showing that Ramsundar had not been in the visitation area on that date.  (*Id*.).  These video recordings were not preserved, nor were video recordings from other days during that same week.

Further, Respondent's counsel did not immediately correct the record before the Court, but instead cited to Ramsundar's claim in a filing on April 8, 2020. (*Id.* at 25-26).

"Petitioner respectfully requests that the Court issue a formal admonishment directed to Respondent's counsel and all relevant agencies and officials regarding their duty to preserve evidence even when it is unfavorable to their case; Petitioner also seeks attorney's fees for the time spent responding to [Respondent's] motion for sanctions based on the supposed threat." (Dkt. 274 at 16). The Court declines to impose either of these requested sanctions.

As to Petitioner's request for a formal admonishment, Petitioner contends that this sanction is warranted under Federal Rule of Civil Procedure 37(e)(1), because it is necessary to "cure the prejudice" resulting from the destruction of the video evidence. (*Id.*). However, no such prejudice exists. The government concedes that the video tapes at issue did not show Ramsundar in the visitation area on February 27, 2020. Further, there is no evidence before the Court that any negative consequences to Petitioner ever flowed from Ramsundar's allegation; certainly the Court never credited such allegation nor took any action based thereon. (*See* Dkt. 225 at 21 (explaining that in making its determinations, the Court "has given no credence to Ramsundar's allegation that Petitioner made a threat on his life after Ramsundar was revealed as a confidential informant in this matter")). Under these circumstances, issuance of a formal admonishment is not warranted under Rule 37(e)(1).

As to Petitioner's request for attorney's fees, he seeks imposition of this sanction pursuant to the Court's inherent authority. (Dkt. 274 at 17). Again, the Court is not

persuaded that this is the rare case in which the imposition of such sanctions is warranted. Petitioner concedes that the current record is insufficient to determine "whether the spoliation that occurred here was the result of bad faith" and contends that "[f]urther factual inquiry—through testimony at deposition or in court—is necessary to determine how [the spoliation] occurred and whether it is attributable to bad faith." (*Id.*). The Court has already explained at length why it will not order such additional discovery in this case; that explanation applies equally to this request for sanctions. While Respondent's counsel's conduct was, at a minimum, extremely careless, the current posture of this litigation does not warrant the expenditure of judicial resources urged by Petitioner. *See State*, 461 F. Supp. 3d at 84 (explaining that the conclusion that further inquiry into the allegation that the defendants had concealed evidence was not warranted was "based primarily on the fact that, even if Plaintiffs' allegations are accurate, that would not have changed the outcome of this litigation").

For all these reasons, the Court grants Petitioner's motion for sanctions (Dkt. 164) solely to the extent that the Court finds Petitioner is entitled to an award of attorney's fees under Rule 37(a)(5)(A) for his successful motion to compel unless Respondent can demonstrate that an exception applies. As discussed above, further briefing as to the amount of the fee award and the existence of an exception will occur in accordance with the schedule set by the Court. Petitioner's motion for sanctions is denied in all other respects.

## II.    **Respondent's Request For Vacatur**

The Court turns next to Respondent's request that the Court vacate its rulings and judgment related to Petitioner's detention under § 1226a.  Respondent originally sought vacatur from the D.C. Circuit pursuant to *United States v. Munsingwear*, 340 U.S. 36 (1950).  (Dkt. 295-1 at 3).  *Munsingwear* provides for vacatur of "judgments whose review is . . . 'prevented through happenstance'—that is to say, where a controversy presented for review has 'become moot due to circumstances unattributable to any of the parties.'"  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994).  The D.C. Circuit then, on its own motion, remanded the case to this Court "with instructions to consider [Respondent's] request for vacatur as a motion for relief from an order pursuant to Federal Rule of Civil Procedure 60(b)."  (Dkt. 288).

Before the Court considers the merits of Respondent's request for vacatur, it must address certain threshold disagreements between the parties.  First, Respondent argues that the Court should apply Second Circuit caselaw in resolving his motion for vacatur and, relatedly, that the Court is bound by the Second Circuit's vacatur of the Court's rulings as to the regulation.  (Dkt. 299 at 16-17).  Second, Petitioner argues that the Court is not limited to applying the *Munsingwear* standard, but instead, has broader discretion under Rule 60(b) to deny vacatur based on equitable considerations.  (Dkt. 301 at 7).

As to Respondent's argument regarding the applicable circuit law, 8 U.S.C. § 1226a(b)(4) provides that "[t]he law applied by the Supreme Court and the United States Court of Appeals for the District of Columbia Circuit shall be regarded as the rule of decision in habeas corpus proceedings [held pursuant to § 1226a]."  This Court has

previously determined that "8 U.S.C. § 1226a(b)(4) does not require the Court to apply D.C. Circuit procedural law." (Dkt. 225 at 11). However, the Court rejects Respondent's contention that the standard for resolving a motion for vacatur under Rule 60(b) is a matter of procedure. Initially, the Court notes that Respondent has not identified any pertinent differences in the law of the Second Circuit and the D.C. Circuit with respect to the standard for resolving a Rule 60(b) motion. Instead, his argument in this regard appears to be made solely for the purpose of asserting that the Court is bound by the Second Circuit's vacatur rulings in this matter. However, even if the Court were to apply Second Circuit law, the question before it now is very different than the question that the Second Circuit addressed with respect to the Court's rulings on 8 C.F.R. § 241.14(d). The Court's rulings as to the regulation were pure matters of legal interpretation, which is the only issue that the Second Circuit concerned itself with on appeal. This is amply illustrated by the fact that the Second Circuit concluded Respondent was likely to prevail on appeal because a preponderance of the evidence standard was likely sufficient to satisfy due process standards, *see Hassoun*, 968 F.3d at 202, while making no mention that Respondent had conceded, in seeking to cancel the evidentiary hearing, that he could not satisfy the preponderance standard. The determination of whether to vacate "is an equitable one," *U.S. Bancorp* 513 U.S. at 29, and the equities of vacating a pure legal determination as to the validity of a regulation are very different than the equities of vacating a factual determination made after extensive discovery and litigation.

In any event, the Court disagrees that a request to vacate a final judgment is merely "procedural." As Petitioner points out, in the analogous context of patent law, where

district courts apply regional circuit law as to procedure and Federal Circuit law as to substance, the Federal Circuit has held that "[a] district court's denial of a motion to vacate its judgment . . . [under Rule 60(b)] is reviewed on the procedural standards of the regional circuit, while any aspects of the motion that are unique to patent law are reviewed in accordance with Federal Circuit law." *Cardpool, Inc. v. Plastic Jungle, Inc*., 817 F.3d 1316, 1321 (Fed. Cir. 2016). *Cardpool* confirms that there is a distinction between the procedural aspects of a motion for vacatur under Rule 60(b) and the substantive standards informing the Court's ultimate decision. In the context of this matter, those substantive standards must be drawn from the law of the D.C. Circuit.

Turning to Petitioner's arguments as to the applicable substantive standards, the Court agrees that it is not limited to the factors elucidated in *Munsingwear*. The Supreme Court itself has distinguished between *Munsingwear* vacatur and consideration of a Rule 60(b) motion by a district court. *See U.S. Bancorp*, 513 U.S. at 29 ("Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)."). Further, while neither the Second Circuit nor the D.C. Circuit have directly addressed the issue, "[t]he Circuit courts that have addressed whether" *Munsingwear* and its progeny "*necessarily* bind a district court in assessing a Rule 60(b) motion have held that they do not." *Hall v. Louisiana*, 884 F.3d 546, 550 & n.17 (5th Cir. 2018) (emphasis in original and collecting cases).

However, this does not mean that the *Munsingwear* inquiry is irrelevant, nor does the Court understand Petitioner to argue that this is the case.  Instead, Petitioner contends that "factors beyond the ordinary *Munsingwear/Bancorp* factors may inform the vacatur analysis, especially in 'unusual circumstances.'"  (Dkt. 301 at 9 (quoting *Hall*, 884 F.3d at 550)).  Accordingly, the Court begins its inquiry with an application of the *Munsingwear* analysis.

As noted above, *Munsingwear* counsels in favor of vacatur where a matter was mooted while on appeal through happenstance.  *See U.S. Bancorp*, 513 U.S. at 23.  Here, the parties disagree over whether Petitioner's removal from the United States was a matter of happenstance or was instead the product of the government's voluntary actions.  This distinction is critical, because vacatur is generally not appropriate "in a case in which review is prevented, not by happenstance, but by the deliberate action of the losing party before the district court[.]"  *United States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988) (citation omitted).

The unique circumstances of this case make it a close question whether Petitioner's removal can be characterized as happenstance or something close thereto.  Certainly it is a rather large coincidence that the government was suddenly able to arrange for Petitioner's removal so quickly after this Court granted the Petition.  However, as the Court has previously noted, there is substantial evidence that the government had been engaged in ongoing and active efforts to remove Petitioner from the United States since his release from criminal custody.  (Dkt. 256 at 3); *see also Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *2 (W.D.N.Y. Jan. 2, 2019) (discussing extensive efforts made

to identify a country that would accept Petitioner).  Moreover, were it the case that the government could have simply arranged for Petitioner's removal at any time, as Petitioner seems to suggest, it is not at all clear why the government would have elected not to do so before expending the time and resources necessary to defend this case, particularly once it became clear that this Court was skeptical of the legal justification for detention.  The Court cannot conclude on the instant record that the timing of Petitioner's removal was engineered by Respondent, rather than being the culmination of years of efforts to comply with the government's statutory mandate to remove Petitioner from the United States.  Nor, as Petitioner suggests, does the Court find it necessary to order additional discovery as to this issue.  (*See* Dkt. 301 at 14 n. 2 ("The Court could, if it deemed it relevant, require the government to explain in more detail the timing and substance of its efforts to find a receiving country.")).  Petitioner has cited no case in which a court ordered such discovery, and the Court does not find that the circumstances of this case counsel in favor of such action.

Moreover, even if Petitioner's removal was not pure happenstance—indeed, Respondent acknowledges that "mootness in this case was the work of several actors, including Petitioner, Respondent, and the country of removal" (Dkt. 299 at 12)—it is also not the case, as Petitioner suggests, that the result in this case was the functional equivalent of a voluntary settlement (*see* Dkt. 301 at 12).  The government had a mandatory, statutory duty to remove Petitioner from the United States.  That this result was also agreeable to Petitioner, such that he was willing to take actions necessary to facilitate it, does not mean that the government was any less bound to pursue this outcome, and its actions cannot

fairly be characterized as voluntary.  *See N. California Power Agency v. Nuclear Regulatory Comm'n*, 393 F.3d 223, 225 (D.C. Cir. 2004)  ("Of prime consideration . . . is whether the party seeking relief from the judgment below <u>caused the mootness by voluntary act</u>" (quotation omitted and emphasis added)).

The Court has further considered the equities of the matter, including the other arguments proffered by Petitioner, and concludes that vacatur is appropriate.  Of particular importance, the Court has no desire to create a disincentive for the government to expend all available efforts in effectuating final orders of removal.  This Court has dealt with numerous habeas corpus actions involving detainees at the BFDF and is quite familiar with the hardships those detainees suffer when their removals are delayed.  Further, vacatur will have no prejudicial effect on Petitioner, who has been removed and is barred from re-entering the United States.  Under all the circumstances of this case, the Court finds that the equities favor vacatur, and accordingly grants Respondent's request for the same.

## CONCLUSION

For the reasons discussed above, the Court: (1) grants Petitioner's motion for sanctions (Dkt. 164) solely to the extent that the Court finds Petitioner is entitled to an award of attorney's fees under Rule 37(a)(5)(A) for his successful motion to compel unless Respondent can demonstrate that an exception applies and denies Petitioner's motion for sanctions in all other respects; (2) grants attorney Joseph F. Carilli, Jr.'s motion to withdraw as counsel for Respondent (Dkt. 283); (3) grants in part and denies in part Respondent's motion to file his supplemental submission in opposition to the motion for sanctions *ex parte* and *in camera* (Dkt. 283); (4) grants Petitioner's motion to file portions of his

supplemental opposition to Respondent's request for vacatur under seal (Dkt. 300); and (5) grants Respondent's request for vacatur.

Petitioner shall file his application for fees within 21 days of entry of this Decision and Order, Respondent shall file any response within 14 days after receipt of the fee application, and Petitioner shall file any reply within seven days of receipt of the response. The Court vacates as moot its prior rulings and judgment as to Petitioner's challenges to his detention under 8 U.S.C. § 1226a.  The Clerk of Court is instructed to issue an amended judgment dismissing the Petition as moot.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      March 8, 2021
            Rochester, New York